IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> NELLSON NUTRACEUTICAL, INC., *et al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No. 06-10072 (PJW) <br> Jointly Administered <br><br> Re: Docket Nos. 10 and 35 |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE MOTION OF THE DEBTORS FOR AN ORDER (A) AUTHORIZING THE DEBTORS TO CONTINUE TO USE THEIR EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, CHECKS AND BUSINESS FORMS; (B) PROVIDING ADMINISTRATIVE PRIORITY STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND (C) APPROVING THE WAIVER OF SECTION 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS**

The Official Committee of Unsecured Creditors (the "Committee") of Nellson Nutraceutical, Inc. and its debtor-affiliates (the "Debtors"), by and through its undersigned proposed counsel, objects to the Motion Of The Debtors For An Order (A) Authorizing The Debtors To Continue To Use Their Existing Cash Management System, Bank Accounts, Checks And Business Forms; (B) Providing Administrative Priority Status To Postpetition Intercompany Claims, And (C) Approving A Waiver Of Section 345(b) Deposit And Investment Requirements (the "Motion"),[1] and states as follows:

## FACTUAL BACKGROUND

1. On January 28, 2006 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors' bankruptcy cases are jointly administered pursuant to Fed.R.Bankr.P. 1015.

2.  The Debtors are continuing in possession of their respective properties and are operating and managing their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.  On or about February 9, 2006, the United States Trustee held an organizational meeting of creditors (the "Organizational Meeting"). At the Organizational Meeting, the United States Trustee appointed the Committee pursuant to Section 1102(a) of the Bankruptcy Code. At the Organizational Meeting, the Committee selected Reed Smith LLP as its proposed counsel.

### The Stock in Nellson Canada

4.  Nellson Nutraceutical Canada, Inc. ("Nellson Canada") is a wholly-owned non-debtor subsidiary of the Debtors.

5.  Prior to the Petition Date, the Debtors pledged sixty-five percent (65%) of the stock in Nellson Canada as collateral for their obligations to certain of their secured pre-petition lenders (the "Lenders").[2] The remaining thirty-five percent (35%) of the stock in Nellson Canada remains unencumbered and therefore constitutes an asset of the Debtors which is available for distribution to unsecured creditors.

### The Cash Management Motion

6.  On January 28, 2006, the Debtors filed the Motion. Pursuant to the Motion, the Debtors seek, *inter alia*, authorization to continue utilizing their existing Cash Management System which allows the Debtors to engage in Intercompany Transactions between the Debtors

---

[2]  The Committee's factual investigation is ongoing. Nothing herein shall be deemed to be an admission regarding the validity of any security interest asserted by any Lender.

and Nellson Canada. In addition, the Debtors request, *inter alia*, that all Intercompany Claims (which derive from Intercompany Transactions) be afforded administrative priority status.

7. In the Motion, the Debtors state that "[i]ntercompany transfers to Nellson Canada are made on a cash-positive basis from the Debtors' perspective because Nellson Canada generates significantly more revenues and profits for the benefit of the Debtors than Nellson Canada utilizes in its business." See Motion at ¶ 11, p. 5.

8. The Motion further provides that the Debtors currently maintain records of the Intercompany Transactions and "will continue to maintain such records, including records of all current intercompany accounts receivable and payable." See Motion, ¶ 28.

9. On January 31, 2005, the Bankruptcy Court entered an Interim Order (A) Authorizing The Debtors To Continue To Use Their Existing Cash Management System, Bank Accounts, Checks And Business Forms; (B) Providing Administrative Priority Status To Postpetition Intercompany Claims, And (C) Approving A Waiver Of Section 345(b) Deposit And Investment Requirements (the "Interim Cash Management Order") which allows the Debtors to continue to utilize the Cash Management System and afford administrative expense priority to Intercompany Claims.

10. The Interim Cash Management Order contains no explicit requirement that the Debtors maintain detailed records of all Intercompany Transfers.

**The Cash Collateral Motion**

11. Also on January 28, 2006, the Debtors filed a Motion Pursuant to 11 U.S.C. §§ 105, 361, 362 and 363, Fed. R. Bankr. P. 4001(b) and 9014, and Del. Bankr. LR 4001-2 Authorizing Debtors' Use of Cash Collateral, Providing Adequate Protection Therefor and Scheduling a Final Hearing Thereon (the "Cash Collateral Motion").

12. On January 31, 2006, the Bankruptcy Court entered an Interim Order Pursuant To §§ 105, 361, 362 And 363 Of The Bankruptcy Code Authorizing The Use Of Cash Collateral And Granting Adequate Protection To UBS, AG (the "Interim Cash Collateral Order"). The Interim Cash Collateral Order granted the Cash Collateral Motion (in part) on an interim basis.

13. The Interim Cash Collateral Order places certain restrictions on the Debtor's use of cash collateral. Specifically, the Interim Cash Collateral Order provides, *inter alia*, that "no event(s) of default shall occur as a result of non-compliance with the Budget unless . . . [t]he actual amount of Ending Cash held by Nellson Nutraceutical Canada, Inc. at the end of the week for any two consecutive weeks exceeds $8.4 million." See Interim Cash Collateral Order (D.I. 34), ¶ 2f.

14. This amount of $8.4 million was subsequently lowered to $6.0 million pursuant to the Second Interim Order Pursuant To §§ 105, 361, 362 And 363 Of The Bankruptcy Code Authorizing The Use Of Cash Collateral And Granting Adequate Protection To UBS, AG (the "Second Interim Cash Collateral Order") entered by the Bankruptcy Court on February 22, 2006. See Second Interim Cash Collateral Order (D.I. 120), ¶ 2f.

## OBJECTION

15. The Committee objects to the Motion on the grounds that the Debtors' proposed usage of its Cash Management System facilitates the depletion of value in Nellson Canada and, consequently, devalues the stock of Nellson Canada to the detriment of the unsecured creditors. Thirty-five percent (35%) of the equity in Nellson Canada (the "Nellson Canada Equity") is an *unencumbered asset* of the Debtors available for distribution to unsecured creditors.

16. In order to preserve the value of the Debtors' 35% unencumbered interest in the Nellson Canada Equity, the Committee requests that this Court:

      (a) require the Debtors to pay Nellson Canada's Intercompany Claims as and when they fall due;

      (b) grant Nellson Canada an allowed administrative superpriority claim for any unpaid Nellson Canada Intercompany Claims;

      (c) prohibit the Debtors from limiting the amount of cash which Nellson Canada may hold; and

      (d) require the Debtors to keep detailed records of all Intercompany Transactions and Intercompany Claims.

**A.**    **The Debtors Should Timely Pay The Post-Petition Intercompany Claims Owed To Nellson Canada. In addition, Nellson Canada's Intercompany Claims Should Be Accorded Administrative Superpriority Claim Status.**

    17.    The Debtors' proposed Cash Management System enables the Debtors to deplete the unencumbered value in Nellson Canada by permitting the accrual of Intercompany Claims without prompt payment. Pursuant to the Interim Cash Management Order, the Debtors are free to cause Nellson Canada to extend credit to the Debtors in return for nothing more than an administrative expense claim.

    18.    A mere administrative priority claim, which the Debtors seek to substitute for timely payment of Nellson Canada's Intercompany Claim, may dissipate the 35% unencumbered value in Nellson Canada to the detriment of unsecured creditors. Indeed, Congress itself recognized that "there is the uncertainty that the estate will have sufficient property to pay administrative expenses in full." 124 Cong. Record H11047 (September 28, 1978).

    19.    Certain of the Lenders have taken the position before this Court that the value of the Debtors' assets are less than the amount of the Lenders' secured claims. The right to an administrative expense claim will be of no value should those Lenders be correct because the Debtors' estates will have no assets to pay administrative claims (other than the unencumbered interest in Nellson Canada).

20. In addition, certain of the Lenders have taken the position before this Court that valuation is the key issue in these cases. The mere right to an administrative expense claim will devalue Nellson Canada to the detriment of the Debtors' unsecured creditors. Specifically, if certain of the Lenders are correct that they are undersecured, then Nellson Canada's administrative expense claim will have little or no value. In valuing Nellson Canada for the purpose of determining unencumbered assets available for distribution to unsecured creditors, little if any value may be placed on Nellson Canada's administrative claim against the Debtors (even though the Debtors will have received post-petition goods or services from Nellson Canada, as well as Nellson Canada's cash). In essence, the 35% unencumbered interest in Nellson Canada will be devalued as Nellson Canada will have parted with goods and services in exchange for a worthless Intercompany Claim.

21. On the other hand, if the Debtors timely pay Nellson Canada's Intercompany Claims, then Nellson Canada will have the cash that it should receive in exchange for post-petition goods or services. In valuing Nellson Canada, 35% of that cash will be available for distribution to unsecured creditors.

22. The potential dissipation of the unencumbered interest in the Nellson Canada Equity is a very real concern. In fact, the Debtors admit that "Nellson Canada generates significantly more revenues and profits for the benefit of the Debtors than Nellson Canada utilizes in its business." See Motion at ¶ 11, p. 5.

23. Therefore, in order to preserve the value of the partially unencumbered Nellson Canada Equity, the Debtors must be required to pay the Intercompany Claims of Nellson Canada as and when they become due.

24. In addition, to further protect the value of the partially unencumbered Nellson Canada Equity, Nellson Canada's Intercompany Claims should be accorded administrative

superpriority status. In <u>In re WorldCom, Inc.</u>, 2002 WL 1732646 at *12 (S.D.N.Y. July 22, 2002), the court recognized that intercompany extensions of credit under a cash management system should be afforded adequate protection. Specifically, the court ordered as follows:

> As adequate protection for each Debtor for the continued use of the Centralized Cash Management System to the extent that any Debtor transfers property (including cash) following the Petition Date (the "Adequately Protected Debtor") to or for the benefit of any other Debtor (the "Beneficiary Debtor") . . . then . . . the Adequately Protected Debtor shall have (x) an allowed claim against the Beneficiary Debtor . . . under sections 364(c)(1) and 507(b) of the Bankruptcy Code, having priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall bear interest at the Prevailing Rate . . . and (y) a lien on all property of the Beneficiary Debtor's estate under section 364(c)(3) of the Bankruptcy Code securing such [claim].

<u>In re WorldCom, Inc.</u>, 2002 WL 1732646 at *12 (S.D.N.Y., July 22, 2002); <u>see also</u> <u>Matter of Federated Dept. Stores, Inc.</u>, 1990 WL 120751, *9 (Bankr. S.D. Ohio, July 26, 1990) (pursuant to its cash management order, "the Court granted all Inter-Company Balances . . . and any other inter-company claims arising on or after [the petition date] super-priority status pursuant to section 364(c)(1) of the Bankruptcy Code.").

25.     For those reasons, this Court should require the Debtors to (a) timely pay Nellson Canada's Intercompany Claims and (b) grant administrative superpriority status to any unpaid Nellson Canada Intercompany Claims.

**B.     The Cash Management System, Together With The Cash Collateral Order, Operate To Impose Inappropriate Limitations On The Amount Of Cash In Nellson Canada.**

26.     The Cash Management System also operates in tandem with the First and Second Interim Cash Collateral Order to limit the amount of cash in Nellson Canada thereby further devaluing Nellson Canada to the detriment of the Debtors' unsecured creditors. As set forth above, the Second Interim Cash Collateral Order provides that the Debtors' non-compliance with Budget for the Debtors' use of Cash Collateral (as set forth in the Second Interim Cash Collateral

Order) will not constitute a default unless any number of circumstances occurs. One of these circumstances occurs when the amount of cash held by Nellson Canada at the end of two consecutive weeks exceeds $6.0 million. See Second Interim Cash Collateral Order (D.I. 120), ¶ 2f.

27.　　In order to comply with the Second Interim Cash Collateral Order, the Debtor must purge Nellson Canada of its cash in excess of $6 million. This cash is then paid to the Debtors via an Intercompany Transfer pursuant to the Cash Management System. In this way, the Second Interim Cash Collateral Order and the Interim Cash Management Order jointly operate to transfer Nellson Canada's cash, 35% of which is effectively unencumbered by the Lenders' liens, to the Debtors whose assets are, according to the Lenders, fully unencumbered. Accordingly, the Debtors' Cash Management System and current and proposed use of cash collateral strip unencumbered value from the unsecured creditors and render it fully encumbered by the Lenders' security interests.

28.　　An example illustrates the potential detriment to unsecured creditors. As indicated above, the Interim Cash Collateral Order provided that Nellson Canada could hold $8.4 million in cash. See Interim Cash Collateral Order (D.I. 34), ¶ 2f. The Second Interim Cash Collateral Order reduced that limit to $6.0. See Second Interim Cash Collateral Order (D.I. 120), ¶ 2f. That $2.4 million reduction has a profound effect on the Debtors' unsecured creditors. Thirty five percent (35%) of that $2.4 million would be effectively unencumbered, thereby providing $840,00 in value for unsecured creditors.

29.　　Nellson Canada should be entitled to keep its cash without any limitation. Allowing the Debtors to channel cash out of Nellson Canada via Intercompany Transactions is an inappropriate use of the Cash Management System that prejudices the Debtors' unsecured creditors by diminishing the value of the unencumbered interest in the Nellson Canada Equity.

**C.    The Cash Management Order Should Require The Debtors To Maintain Records Of All Intercompany Transactions And Intercompany Claims.**

30.    In the Cash Collateral Motion, the Debtors stated their intention to maintain records of Intercompany Transactions as well as "records of all current intercompany accounts receivable and payable." See Motion, ¶ 28. Despite this representation, the Interim Cash Management Order contains no explicit requirement that the Debtors maintain those records. To further insure the preservation of the Debtors' unencumbered 35% interest in Nellson Canada, the Committee requests that the final Cash Management Order explicitly require the Debtors to maintain records of all Intercompany Transactions and Intercompany Claims, as is customary. See, e.g., In re GC Cos. 274 B.R. 663, 666-67 (Bankr. D.Del. 2002) ("the Bankruptcy Court entered an Order approving the Cash Management System [which] directed the Debtors to maintain records of all transfers within the Cash Management System in order that all post-petition receipts, transfers, disbursements and other transactions shall be adequately and promptly documented in, and readily ascertainable from, its books and records").

**RESERVATION OF RIGHTS**

31.    The Committee reserves its right under Section 1109(a) of the Bankruptcy Code to appear and be heard at the hearing on the Motion and to raise any other objections that the Committee deems appropriate.

WHEREFORE, the Committee respectfully requests that this Court enter an Order (i) denying the Motion as submitted; (ii) requiring the Debtors to pay Nellson Canada's Intercompany Claims as and when they fall due, (iii) granting Nellson Canada an administrative superpriority claim to further ensure prompt payment of Nellson Canada's Intercompany Claims; (iv) prohibiting the Debtors from limiting Nellson Canada's cash; (v) requiring the Debtors to maintain detailed records of the Intercompany Transactions and Intercompany Claims; and (vi) granting to the Committee such further relief as is appropriate.

Dated: March 10, 2006  
       Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By: /s/ Kurt F. Gwynne  
    Kurt F. Gwynne (No. 3951)  
    J. Cory Falgowski (No. 4546)  
    1201 Market Street, Suite 1500  
    Wilmington, DE 19801  
    Telephone: (302) 778-7500  
    Facsimile: (302) 778-7575  
    E-mail: kgwynne@reedsmith.com  
           jfalgowski@reedsmith.com

and

Claudia Z. Springer, Esquire  
2500 One Liberty Place  
1650 Market Street  
Philadelphia, PA 19103-7301  
Telephone: (215) 851-8100  
Facsimile: (215) 851-1420  
E-mail: cspringer@reedsmith.com

Counsel to the Official Committee of Unsecured Creditors of Nellson Nutraceutical, Inc., *et al.*