## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Case No. 06-10072 (PJW) |
| NELLSON NUTRACEUTICAL, INC.,*et al.* | Chapter 11 |
| Debtor. | (Jointly Administered) |
| | **Related Docket No: 160** |

### OBJECTION TO MOTION OF DEBTORS FOR ORDER UNDER SECTIONS 105(a) AND 362(a) OF THE BANKRUPTCY CODE EXTENDING THE AUTOMATIC STAY TO APPLY TO NELLSON NUTRACEUTICAL CANADA, INC., IN PENDING ARBITRATION PROCEEDING

## I.   PRELIMINARY STATEMENT

1.      Bariatrix Products International, Inc., Bariatrix International, Inc., and Bariatrix West, Inc. (collectively, "Bariatrix") object to the Debtors' requested extension of the automatic stay of section 362(a) of the Bankruptcy Code (the "Debtors' Motion") for the following reasons:

2.      First, as set forth in Bariatrix' Motion to Enforce Arbitration Agreement / Compel Arbitration or, in the Alternative, for Relief From the Automatic Stay (the "Bariatrix Motion"), which is set for hearing concurrently herewith, the Court should enforce the parties' binding arbitration agreement with respect to the disposition of the funds Bariatrix placed in escrow and compel the parties to proceed in the pending arbitration of the parties' related disputes.

3.      Second, the Debtors seek an injunction against Bariatrix and the arbitration panel but have failed to follow the required procedure.  Pursuant to Rule 7001(7) of the Federal Rules of Bankruptcy Procedure, the Debtors must commence an adversary proceeding in order to obtain injunctive relief such as that sought in the Debtors' Motion.  Moreover, the Debtors' Motion fails even to allege the legal elements required to meet the standard for injunctive relief under section 105(a).

4.      Third, the escrow fund at issue is not property of the Debtors' estates that justifies expansion of the automatic stay.  The Debtors have only a contingent claim against <u>property of Bariatrix</u> that was placed in escrow and that interest is further attenuated by the fact that the only purported claim against the fund would be a claim of Nellson Nutraceutical Canada, Inc. ("Nellson Canada"), a nondebtor.  Thus, the Debtors' only "property interest" at issue is the interest of Nellson Nutraceutical, Inc. in its subsidiary Nellson Canada, which may or may not hold a claim against the escrow funds.

5.      Fourth, the arbitration will determine whether nondebtor Nellson Canada had any claim against the escrow funds as of July 3, 2005 (six months prepetition), the date the escrow funds were to be released to Bariatrix.  In effect, the Debtors are attempting to use these bankruptcy proceedings to obtain substantive rights they did not have under applicable state law as of the petition date.

## II.      **BACKGROUND**

6.      The Bariatrix Motion, set for hearing concurrently with the Debtors' Motion, sets forth in detail the factual background necessary to the Court's consideration of the Debtor's Motion and the Bariatrix Motion is incorporated herein by this reference.

## III.     **THE DEBTORS' MOTION IS PROCEDURALLY DEFECTIVE – THE RELIEF SOUGHT MAY ONLY BE OBTAINED THROUGH AN ADVERSARY PROCEEDING**

7.      Rule 7001(7) of the Federal Rules of Bankruptcy Procedure provides that a proceeding to obtain an injunction or other equitable relief is an adversary proceeding.  Failure to file the required adversary proceeding is alone sufficient reason for the Court to deny a request for an injunction under section 105(a).  <u>In re Conxus Commc'ns, Inc.</u>, 262 B.R. 893, 899 (D. Del. 2001)  Indeed, in the very cases cited in the Debtors' Motion in support of their request for

injunctive relief under section 105(a), injunctions were granted in the context of an adversary

proceeding.  A.H. Robins v. Piccinin, 788 F.2d 994 (4th Cir. 1986); Am. Film Tech., Inc. v.

Tariteron (In re Am. Film Tech., Inc.), 175 B.R. 847 (Bankr. D. Del. 1994).

## IV.    THE DEBTORS' MOTION FAILS EVEN TO ALLEGE GROUNDS FOR INJUNCTIVE RELIEF

8.      Bariatrix does not dispute that extending the automatic stay to non-debtor parties

is possible under extraordinary circumstances.  However, the standards for injunctive relief under

section 105(a) are very strict, and track the traditional standards for injunctive relief as set forth

in Rule 7065 of the Federal Rules of Bankruptcy Procedure:  (1) there must be a danger of

imminent, irreparable harm to the estate or the debtor's ability to reorganize; (2) there must be a

substantial likelihood of success on the merits; (3) harm to the movant must outweigh harm to

the non-movant; and (4) injunctive relief would not violate the public interest.  Wedgewood Inv.

Fund, Ltd. v. Wedgewood Realty Group, Ltd. (In re Wedgewood Realty Group, Ltd.), 878 F.2d

693, 700-01 (3d. Cir. 1989); Univ. Med. Ctr v. Am. Sterilizer Co. (In re Univ. Med. Ctr), 82 B.R.

754, 757 (Bankr. E.D. Pa. 1988).

9.      The Debtors' Motion fails to address these required elements of the relief sought.

The Debtors' Motion contains no allegations which would support findings that these standards

have been met.  Accordingly, Bariatrix respectfully requests that the Court deny the Debtors'

Motion.

## V.    THE AUTOMATIC STAY IS NOT IMPLICATED IF THE ARBITRATION PROCEEDS AGAINST NELLSON CANADA ONLY

10.      Nellson Canada, a Canadian corporation, is not a debtor.  Section 362(a)(1) does

not apply to stay an action against Nellson Canada.  In order to invoke the automatic stay, the

Debtors contend that "Bariatrix is attempting to exercise control over property of the estate"

[Debtors' Motion, ¶ 3] such that section 362(a)(3) applies to stay the pending arbitration from proceeding against Nellson Canada alone.  The Debtors fail to show, however, that they have a property interest in the escrow fund that is subject to the protection of section 362(a)(3).

11.     The Debtors refer to the Escrow Fund as their "insurance policy," an analogy meant to bring this case closer to the facts of the Third Circuit's recent decision in <u>ACandS, Inc. v. Travelers Cas. & Sur. Co.</u>, 435 F.3d 252 (3d Cir. 2006).  Of course, the Escrow Fund is not an insurance policy, and the <u>ACandS</u> case is further distinguished because it did not involve an action against a nondebtor.  The Debtors cannot establish that the Escrow Fund ever became property of their respective estates.  At best, the Debtors have alleged that they may have triggered a condition that would give Nellson Canada a contingent, unliquidated claim against the Escrow Fund.

### A.     The Escrow Fund and Nellson Canada's Contingent, Unliquidated Interest Therein

12.     Among other things, the Purchase Agreement provides that Bariatrix shall indemnify, defend and hold harmless Nellson from and against claims arising out of any Excluded Liabilities or Bariatrix's pre-Closing business operations.  In connection with the Purchase Agreement's indemnity provisions, the Purchase Agreement also required Bariatrix to establish an Escrow Fund for a fixed term in a total amount of approximately $10,031,924.83.  The purpose of the Escrow Fund was to secure Bariatrix's indemnity obligations under the Purchase Agreement for a fixed term of twenty-four (24) months following the Closing.  Bariatrix established the Escrow Fund in accordance with the agreements between the parties.

13.     As the party creating the Escrow Fund, Bariatrix holds legal title to the funds, subject to the conditions set forth in the Escrow Agreement.  <u>In re Summit Airlines, Inc.</u>, 94 B.R. 367, 371 (Bankr. E.D. Pa. 1988).  Under the Escrow Agreement, Bariatrix has the right to direct

investment of the Escrow Fund among several alternative investments approved by the parties. Bariatrix is also entitled to receive any interest, dividends, or profits resulting from such investments, upon release of the Escrow Fund.

14.     The twenty-four month lifespan of the Escrow Fund expired prepetition, and the funds were due to be released to Bariatrix.  Section 541 does not give the Debtors any greater right to property than they had prior to the bankruptcy filing.  Universal Bonding Ins. Co. v. Gittens & Sprinkle Enters., Inc., 960 F.2d 366, 373 (3d Cir. 1992).  Accordingly, the Escrow Fund did not become property of the Debtors' estates.  See, e.g., Fed. Deposit Ins. Corp. v. Knotsman, 966 F.2d 1133, 1141 (7th Cir. 1992) (purchaser became entitled to escrowed funds when contractual requirements met and because such event occurred prepetition, funds were not part of vendor's bankruptcy estate); Dickerson v. Cent. Fla Radiation Oncology Group, 225 B.R. 241 (M.D. Fla. 1998) (condition of the escrow agreement that triggered disbursement of funds was determination of amounts due which occurred pre-bankruptcy); In re One Bancorp Securities Litig., 151 B.R. 1 (D. Me. 1993) (as conditions of escrow intended to protect any interest of the debtor had been fulfilled prepetition, debtor had no interest in funds even though they had not yet been disbursed).

15.     The Debtors allege that they have fulfilled the condition of the Escrow Agreement that would, if true, give rise to a contingent, unliquidated claim against the Escrow Fund.  As set forth in the Bariatrix Motion, however, the only potential claim for indemnity that the Debtors allege exists would be a claim against Nellson Canada.  Therefore, the Debtors' "interest" in the Escrow Fund is derived only through the following absurd formulation:

- the Debtors have an interest in the Nellson Canada subsidiary;
- the Debtors will ultimately be responsible for satisfaction of any claims against Nellson Canada (the Debtors fail to explain why – are the Debtors contending that Nellson Canada is merely an alter ego of the Debtors?); and

- Nellson Canada may have a contingent, unliquidated interest in the Escrow Fund based on potential claim that was first mentioned in 2003 but has never been pursued.

16.     Thus, the only way that the Debtors' can demonstrate that they have any interest in the Escrow Fund is to prove that (1) a potential claim lies against Nellson Canada that is subject to indemnification under the Purchase Agreement; and (2) that the Debtors are liable for Nellson Canada's debts such that a claim against Nellson Canada is a claim against all. The pending arbitration will resolve the first issue. As for the second, it is doubtful that the Debtors truly mean what they have alleged in their Motion.

### B.     Nellson Canada's Interest in the Escrow Fund Is in the Nature of a Conditional Lien, Which Is Not Protected by the Automatic Stay

17.     The Debtors admit that the Escrow Fund is designed to "secure the payment of any claim that may be asserted by the Debtors and/or Nellson Canada against Bariatrix." Debtor's Motion, p. 6, ¶ 21. As such, the interest asserted is akin to a conditional lien against the Escrow Fund. Non-bankruptcy proceedings that extinguish liens that a debtor holds on property of a third party are not subject to the automatic stay. See, Farmers Bank v. March (In re March), 140 B.R. 387 (E.D. Va. 1992), aff'd 988 F.2d 498 (4th Cir. 1993), and cert. denied 510 U.S. 864 (1993). In March, the District Court held that property owned by a nondebtor does not become property of the estate by virtue of the fact that the debtor held a lien on such property. Consequently, the District Court held that the automatic stay did not apply to prevent a foreclosure on the nondebtor's property by a senior lienor that extinguished the debtor's lien. March, 140 B.R. at 389-90.

18.     Likewise, in this case, the pending arbitration will determine whether Nellson Canada had any remaining "security interest" in the Escrow Fund after July 3, 2005, the Release Date. The arbitration ruling may well extinguish any such "interest," but that does not implicate

the automatic stay because the underlying Escrow Fund is not property of the Debtors' respective

bankruptcy estates.

## VI.    **CONCLUSION**

The Debtors have failed to invoke properly this Court's jurisdiction to obtain the

injunctive relief requested in the Debtors' Motion.  For that reason alone, the Debtors' Motion

should be denied.  Even if the Debtors had commenced the required adversary proceeding,

however, the Debtors' Motion is woefully inadequate because it fails to address the appropriate

standard for injunctive relief.  The arbitration that commenced prepetition will determine

whether any indemnifiable claim existed as of July 3, 2005, that would require some amount to

be retained in the Escrow Fund (which would only be for the benefit of nondebtor Nellson

Canada, in any event).  For these reasons, and for the reasons set forth in the Bariatrix Motion to

be heard concurrently, Bariatrix urges the Court to deny the Debtor's Motion.

Dated: March 14, 2006

CONNOLLY BOVE LODGE & HUTZ LLP

Karen C. Bifferato (No. 3279)
Margaret E. Juliano (No. 4722)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899
(302) 658-9141

-and-

ALLEN MATKINS LECK GAMBLE &
MALLORY LLP
A. Kenneth Hennesay, Esq.
1900 Main Street, 5th Floor
Irvine, CA 92614-7321
(949) 553-1313

Attorneys for Bariatrix Products International,
Inc., Bariatrix International, Inc., and Bariatrix
West, Inc.