IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| NELLSON NUTRACEUTICAL, INC.,[1] | ) | Case No. 06-10072 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## CHAPTER 11 PLAN OF LIQUIDATION
## FOR NELLSON NUTRACEUTICAL, INC., ET AL.

---

Laura Davis Jones (Delaware Bar No. 2436)
Rachel Lowy Werkheiser (Bar No. 3753)
Pachulski Stang Ziehl & Jones LLP
919 Market Street, 17th Floor | P.O. Box 8705
Wilmington, Delaware 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Richard M. Pachulski (CA Bar No. 90073)
Brad R. Godshall (CA Bar No. 105438)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

Maxim B. Litvak (CA Bar No. 215852)
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010

Counsel to Debtors and Debtors in Possession

---

Dated: **July 25, 2008**

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) Nellson Nutraceutical, Inc., a Delaware corporation, Fed. Tax Id. #5044; (b) Nellson Holdings, Inc., a Delaware corporation, Fed. Tax Id. #0642; (c) Nellson Intermediate Holdings, Inc., a Delaware corporation, Fed. Tax Id. #0653; (d) Nellson Northern Operating, Inc., a Delaware corporation, Fed. Tax Id. #4689, (e) Nellson Nutraceutical Eastern Division, Inc., a Delaware corporation, Fed. Tax Id. #8503; (f) Nellson Nutraceutical Powder Division, Inc., a Delaware corporation, Fed. Tax Id. #3670; and (g) Vitex Foods, Inc., a California corporation, Fed. Tax Id. #9218.

# Table of Contents

Page

I.     INTRODUCTION .......................................................................................................... 1

II.    DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ................................................. 2

    A.    Rules of Interpretation, Computation of Time, and Governing Law..................... 2

    B.    Defined Terms ....................................................................................................... 4

III.   TREATMENT OF ADMINISTRATIVE EXPENSES AND TAX CLAIMS ................ 20

    A.    Introduction.......................................................................................................... 20

    B.    Administrative Expenses ..................................................................................... 20

    C.    Superpriority Claims............................................................................................ 21

    D.    Payments to Lenders' Professionals .................................................................... 21

    E.    Tax Claims........................................................................................................... 22

IV.   CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ............................................................................................................... 23

    A.    Summary.............................................................................................................. 23

    B.    Classification and Treatment of Claims and Interests ........................................ 24

          1.    Class 1 – Priority Non-Tax Claims.......................................................... 24

          2.    Class 2 – Other Secured Claims............................................................... 25

          3.    Class 3 – First Lien Lender Claims........................................................... 26

          4.    Class 4 – Second Lien Lender Claims ..................................................... 27

          5.    Class 5 – General Unsecured Claims........................................................ 28

          6.    Class 6 – Subordinated Debt Claims ....................................................... 28

          7.    Class 7 – Interests in the Debtors............................................................. 29

V.    ACCEPTANCE OR REJECTION OF PLAN................................................................ 29

    A.    Identification of Unimpaired Classes................................................................... 29

B.    Identification of Impaired Classes ........................................................ 30

C.    Classes Permitted and Not Permitted to Vote ....................................... 30

D.    Nonconsensual Confirmation ................................................................ 31

E.    Postpetition Interest ............................................................................. 31

VI.    MEANS FOR IMPLEMENTATION OF THE PLAN .................................... 31

A.    Continued Corporate Existence and Vesting of Assets ........................ 31

B.    Retained Rights of Action ..................................................................... 32

C.    Corporate Governance ......................................................................... 32

D.    Wind-Down ........................................................................................... 33

E.    Funding for the Plan ............................................................................. 35

F.    Substantive Consolidation .................................................................... 36

G.    Settlement of Intercompany Matters .................................................... 37

H.    Settlement with the Lenders ................................................................. 37

I.    Settlement with Holders of Subordinated Debt Claims ........................ 38

J.    Settlement with Debtors' Officers and Directors; Disallowance of
       Indemnification Claims ......................................................................... 39

K.    Corporate Action/Dissolution ............................................................... 39

L.    Interests in Affiliates and Subsidiaries ................................................ 40

M.    Payment of Plan Expenses ................................................................... 40

N.    Dissolution of the Official Committee .................................................. 41

VII.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........ 41

A.    Rejection of Executory Contracts and Unexpired Leases .................... 41

B.    Bar Date for Rejection Damages .......................................................... 42

VIII.    DISTRIBUTIONS AND RELATED MATTERS ........................................... 42

A.    Dates of Distribution ............................................................................ 42

B.    Cash Distributions ................................................................................ 43

| | C. | Rounding of Payments | 43 |
|---|---|---|---|
| | D. | Disputed Claims | 43 |
| | E. | Undeliverable and Unclaimed Distributions | 44 |
| | F. | Compliance with Tax Requirements | 45 |
| | G. | Record Date in Respect to Distributions | 46 |
| | H. | Reserves | 46 |
| IX. | | LITIGATION, OBJECTIONS TO CLAIMS, AND DETERMINATION OF TAXES | 47 |
| | A. | Litigation; Objections to Claims; Objection Deadline | 47 |
| | B. | Temporary or Permanent Resolution of Disputed Claims | 48 |
| | C. | Setoffs | 49 |
| | D. | Preservation of Retained Rights of Action | 49 |
| X. | | RELEASE, WAIVER AND RELATED PROVISIONS | 50 |
| | A. | Injunctions | 50 |
| | | 1. Generally | 50 |
| | | 2. Injunction Related to Rights of Action and Terminated Claims, Administrative Expenses or Interests | 50 |
| | B. | Exculpation | 51 |
| | C. | Estate Releases of Executives, Lenders, and Holders of Subordinated Debt Claims | 52 |
| | D. | Estate Release of Avoidance Claims | 53 |
| XI. | | PENSION PLANS, OTHER RETIREE BENEFITS AND LABOR CONTRACTS | 54 |
| XII. | | NO REGULATED RATE CHANGE WITHOUT GOVERNMENT APPROVAL | 54 |
| XIII. | | EXEMPTION FROM CERTAIN TRANSFER TAXES | 54 |
| XIV. | | RETENTION OF JURISDICTION AND MISCELLANEOUS MATTERS | 54 |
| | A. | Retention of Jurisdiction | 54 |

B.     Miscellaneous Matters ................................................................ 57

       1.     Headings ......................................................................... 57

       2.     Services by and Fees for Professionals and Certain Parties .................... 57

       3.     Bar Date for Administrative Expenses .................................... 58

       4.     Notices ............................................................................ 59

       5.     Successors and Assigns...................................................... 59

       6.     Severability of Plan Provisions.............................................. 60

       7.     No Waiver......................................................................... 60

       8.     Inconsistencies ................................................................. 61

XV.    CONDITIONS TO CONFIRMATION AND EFFECTIVENESS.................................. 61

     A.     Conditions Precedent to Plan Effectiveness ....................................... 61

     B.     Effect of Non-Occurrence of Conditions to Effective Date................................. 61

XVI.   EFFECT OF CONFIRMATION ................................................................... 62

     A.     Binding Effect of Confirmation ........................................................ 62

     B.     Good Faith ................................................................................. 62

     C.     No Limitations on Effect of Confirmation........................................... 63

XVII.   MODIFICATION OR WITHDRAWAL OF PLAN ....................................... 63

     A.     Modification of Plan ..................................................................... 63

     B.     Withdrawal of Plan ...................................................................... 64

XVIII. CONFIRMATION REQUEST ..................................................................... 64

**Exhibits**

| Exhibit | Description |
|---|---|
| A | Agent Release |
| B | Executive Release |
| C | Lender Release |
| D | Subordinated Debt Holder Release |

Nellson Nutraceutical, Inc. and its affiliated Debtors, Nellson Holdings, Inc.,

Nellson Intermediate Holdings, Inc., Nellson Northern Operating, Inc., Nellson Nutraceutical

Eastern Division, Inc., Nellson Nutraceutical Powder Division, Inc., and Vitex Foods, Inc.,

hereby propose the following Plan of Liquidation pursuant to chapter 11 of title 11 of the United

States Code, 11 U.S.C. §§ 101 *et seq*.:

## I.

## **INTRODUCTION**

The Plan effectuates the terms of an agreement and settlement amongst the

Debtors and their principal creditor constituents and equity holders as to the means for

distributing the remaining assets of the Debtors' Estates and winding-up the Debtors' affairs.

Under the Plan and in accordance with the priorities set forth in the Bankruptcy Code and as part

of the series of compromises contained in the Plan, the Debtors' First Lien Lenders receive the

bulk of the remaining assets in the Estates in the form of cash distributions, after setting aside

$2.0 million in Cash for Second Lien Lenders, nearly $2.5 million in Cash for various

professionals employed by the Lenders, and additional Cash reserves sufficient to satisfy all

other Allowed Administrative Expenses, Priority Claims and Wind-Down costs. Holders of

General Unsecured Claims are released of any potential Avoidance Claims, but receive no other

distributions under the Plan. Finally, as part of a global settlement incorporated herein, Holders

of Subordinated Debt Claims, and each of the Debtors' Executives, shall have the opportunity to

enter into certain releases. Holders of Subordinated Debt Claims and Executives shall receive no

other distributions under the Plan. All Interests in the Debtors shall be cancelled.

1

Taken together, the Plan proposes to fairly and efficiently allocate the Debtors' remaining assets in a manner that is supported by all of the principal constituencies in these cases and will allow these cases to be promptly resolved.

The Disclosure Statement, distributed with this Plan, contains a discussion of the Debtors' history, a summary of the Debtors' assets and liabilities, a summary of what Holders of Claims and Interests will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures and voting requirements necessary for Confirmation of the Plan. The Disclosure Statement is intended to provide Holders of Claims and Interests with information sufficient to enable such Holders to vote on the Plan. *All Claim Holders entitled to vote on this Plan are encouraged to carefully read the Disclosure Statement and this Plan before voting to accept or reject this Plan. No solicitation materials, other than the Disclosure Statement and related materials transmitted herewith and approved by the Bankruptcy Court, have been authorized for use in soliciting acceptance or rejection of this Plan.*

## II.

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

### A.    Rules of Interpretation, Computation of Time, and Governing Law

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and

2

conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to sections and exhibits are references to sections and exhibits of or to the Plan; (e) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

3

## B.    Defined Terms

The following definitions shall apply to capitalized terms used in the Plan:

1.    "Administrative Expense" means an unpaid administrative expense of the kind described in sections 503(b) and 507(a)(2) of the Bankruptcy Code against any of the Debtors (other than the Superpriority Claims), including, without limitation, (i) the actual, necessary costs and expenses of preserving the Estates of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Cases, (ii) compensation and reimbursement of expenses of professionals to the extent allowable under sections 327, 328, 330(a), 331, 503(b or 1103 of the Bankruptcy Code, and (iii) all fees and charges assessed against the Estates under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911 –1930, including the fees, if any, due to the United States Trustee.

2.    "Agent" means UBS AG, Stamford Branch, in its capacity as administrative agent and collateral agent for the First Lien Lenders and Second Lien Lenders.

3.    "Agent Release" means the form of release attached as Exhibit A to the Plan to be executed by the Agent in favor of the Lenders who execute the Lender Release, the Executives who execute the Executive Release, the Holders of Subordinated Debt Claims who execute the Subordinated Debt Holder Release, the Informal Committee and each of its members (acting in such capacity), the Official Committee and each of its members (acting in such capacity), and each of the foregoing parties' respective Representatives.

4.    "Allowed" means

(a)    when used in respect of a Claim, Interest, Administrative Expense or Superpriority Claim, such amount of the Claim, Interest, Administrative Expense or

4

Superpriority Claim or portion thereof which is (1) determined and allowed in whole or in part by a Final Order of the Bankruptcy Court, (2) expressly allowed under the Plan or any Plan Document, or (iii) allowed under a stipulation or settlement with the Debtors; and

(b)     if not "Allowed" in accordance with subsection (a) above, a Claim, Interest or Administrative Expense that has not been Disallowed and is not subject to a pending objection or appeal from an order allowing or disallowing the claim, also will be deemed "Allowed" as follows:

(1)     If no proof of Claim or Interest has been Timely Filed, (A) a Claim also is deemed "Allowed" in the amount and of the type of the Claim which have been scheduled in the Debtors' Schedules as liquidated in amount and not disputed or contingent and (B) an Interest also is deemed "Allowed" in the number and of the type of the Interests which have been listed by the Debtors' Lists of Equity Security Holders; or

(2)     If a proof of Claim or Interest is Timely Filed, (A) a Claim also is deemed "Allowed" in the amount and of the type of the Claim reflected in the proof(s) of Claim and (B) an Interest also is deemed "Allowed" in the number and of the type of the Interest reflected in the proof(s) of Interest, provided however, (C) until, but only until, the Objection Deadline, a Claim will be deemed a Disputed Claim, and not be deemed "Allowed" under this subsection, unless there exists a corresponding Claim of the same type listed in the Debtors' Schedules (and only up to the amount listed in the Debtors' Schedules), which is not listed as disputed, contingent, or unliquidated; and

(3)     An Administrative Expense shall be deemed "Allowed" (A) if the Liquidating Debtors pays it, or (B) if it is for income taxes, is properly asserted by the appropriate taxing authority in accordance with applicable law (including, without limitation, Bankruptcy Code §505), and is not timely contested, provided that (C) the Liquidating Debtors do not object to it by the Objection Deadline.

5.     "Avoidance Claims" means any Rights of Action for the recovery of avoidable transfers arising under Chapter 5 of the Bankruptcy Code or applicable state law.

DOCS_SF:59053.6

6. "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, as set forth in title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as now in effect or hereafter amended.

7. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court of competent jurisdiction as may be administering the Chapter 11 Cases or any part thereof.

8. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

9. "Bar Date" means, when not otherwise specified, the date fixed by statute or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order of the Bankruptcy Court as the deadline for filing proofs of Claims or Interests (whether or not each and every proof of Claim or Interest is subject to such deadline).

10. "Business Day" means any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

11. "Cash" means currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

12. "Chapter 11 Cases" means the cases commenced under chapter 11 of the Bankruptcy Code by each of the Debtors on the Petition Date and pending before the Bankruptcy Court.

13. "Claim" means any claim against the Debtors or any of them within the meaning of section 101(5) of the Bankruptcy Code which is not an Administrative Expense or Superpriority Claim, including, without limitation, claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

14. "Claims Agent" means AlixPartners, LLP, in its capacity as claims agent for the Debtors.

15. "Class" means each category of Claims or Interests classified in Section V of the Plan pursuant to section 1122 of the Bankruptcy Code.

16. "Committee Agreement" means the agreement, dated September 26, 2006, by and among the Agent, certain Lenders, and the Official Committee.

17. "Confirmation" means the approval by the Bankruptcy Court of the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, as effectuated by the Confirmation Order.

18. "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

19. "Confirmation Hearing" means the date or dates established by the Bankruptcy Court for the hearing(s) on confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

20. "Confirmation Order" means the order entered by the Bankruptcy Court confirming (approving) the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, in form and substance acceptable to the Debtors and each of the Support Parties.

7

21.     "Consummation" means substantial consummation of the Plan as that term is used in 11 U.S.C. § 1127(b).

22.     "Creditor" means any Person who is the Holder of a Claim, Administrative Expense or Superpriority Claim against any of the Debtors.

23.     "Debtors" means (a) NNI; (b) Nellson Holdings; (c) NIH; (d) Nellson Northern; (e) Nellson Eastern; (f) Nellson Powder; and (g) Vitex, in their corporate capacities or other capacities and, as appropriate, in their capacities as debtors and debtors-in-possession under chapter 11 of the Bankruptcy Code in their Chapter 11 Cases and, when the context so requires, in their capacities as the Liquidating Debtors.

24.     "Disallowed" means, with respect to a Claim, Interest, Administrative Expense, or portion thereof, that it is determined that the Claim, Interest, Administrative Expense or portion thereof is not allowed under the Bankruptcy Code either by a Final Order, the Plan, any Plan Document or under a stipulation or settlement with any of the Debtors entered into after the Effective Date.

25.     "Disclosure Statement" means the *Disclosure Statement in Support of Chapter 11 Plan of Liquidation of Nellson Nutraceutical, Inc., et al.*, as may be amended, modified or supplemented from time to time, submitted pursuant to section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the Plan.

26.     "Disputed Claim" means (i) a Claim, Interest or Administrative Expense that is subject to a pending objection or for which the Bankruptcy Court's order allowing or disallowing such Claim, Interest or Administrative Expense is on appeal; or (ii) until the Objection Deadline,

8

a.     a Claim for which a corresponding Claim has not been listed in the Debtors' Schedules or for which the corresponding Claim is listed in the Debtors' Schedules with a differing amount (to the extent of such difference), with a differing classification, or as disputed, contingent, or unliquidated; and

b.     a Claim that has not been allowed either by a Final Order, the Plan, any Plan Document or under a stipulation or settlement with any of the Debtors entered into after the Effective Date.

27.     "Distributable Assets" means any and all real or personal property of the Debtors of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Retained Rights of Action, and any other general intangibles of the Debtors, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, without limitation, property of the Estates within the scope of section 541 of the Bankruptcy Code.

28.     "Effective Date" means the first Business Day after the Confirmation Date immediately following the first day upon which all of the conditions to the occurrence of the Effective Date have been satisfied or waived in accordance with the Plan.

29.     "Entity" and "Entities" mean an entity as defined in section 101(5) of the Bankruptcy Code or more than one thereof.

9

30. "Estate(s)" means each estate created pursuant to section 541(a) of the Bankruptcy Code upon the commencement of each Chapter 11 Case.

31. "Executives" mean the individuals described in Article VI(J) of the Plan.

32. "Executive Release" means the form of release attached as <u>Exhibit B</u> to the Plan to be executed by the Executives in favor of the Debtors, their Estates, the Lenders that execute the Lender Release, the Agent upon execution of the Agent Release, the Informal Committee and each of its members (acting in such capacity), the Official Committee and each of its members (acting in such capacity), and each of the foregoing parties' respective Representatives.

33. "Fee Applications" mean applications of Professional Persons under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Cases.

34. "File" or "Filed" means filed of record and entered on the docket in the Chapter 11 Cases or, in the case of a proof of claim, delivered to the Claims Agent.

35. "Final Cash Collateral Order" means the *Final Order Pursuant to Sections 105, 361, 362 and 363 of the Bankruptcy Code Authorizing the Use of Cash Collateral and Granting Adequate Protection to UBS, AG*, entered by the Bankruptcy Court in the Chapter 11 Cases on March 21, 2006, as amended by (a) the *Order Approving Amendment to Final Cash Collateral Order with UBS, AG Concerning Additional Adequate Protection to Ad Hoc Committee of First Lien Holders*, entered by the Bankruptcy Court in the Chapter 11 Cases on June 27, 2006, and (b) the *Order Approving Stipulated Amendment to Final Order Pursuant to Sections 105, 361, 362 and 363 of the Bankruptcy Code Authorizing Use of Cash Collateral and*

*Granting Adequate Protection*, entered by the Bankruptcy Court in the Chapter 11 Cases on November 27, 2007.

36. "Final Order" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal which judgment, order, ruling or other decree has not been reversed, stayed, modified or amended and as to which (a) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending, or (b) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

37. "Final Resolution Date" means the date on which all Disputed Claims of Creditors shall have been resolved by Final Order or otherwise finally determined.

38. "First Lien Credit Agreement" means that certain Amended and Restated Credit Agreement, dated as of July 3, 2003 (as subsequently amended) among NNI, the Guarantors, certain lending institutions, UBS Securities, LLC, as lead arranger, BNP Paribas, as a co-syndication agent, as swingline lender and as issuing bank, Goldman Sachs Credit Partners L.P., as a co-syndication agent, General Electric Capital Corporation, as documentation agent, and the Agent.

39. "First Lien Distributable Assets" means the Distributable Assets, less (i) those Distributable Assets that will be retained by the Liquidating Debtors and used to fund Plan Expenses and the Wind-Down; (ii) Cash and/or other consideration reserved for, or to be distributed to, Creditors (other than Holders of First Lien Lender Claims) under the Plan; and (iii) Retained Rights of Action, provided that such Retained Rights of Action shall be pursued by

11

the Liquidating Debtors solely for the benefit of the First Lien Lenders in accordance with the Plan and any proceeds realized from any Retained Rights of Action shall become First Lien Distributable Assets upon such realization and shall be distributed to the First Lien Lenders in accordance with the Plan.

40.     "First Lien Lender Claims" means all Claims of the First Lien Lenders pursuant to the First Lien Credit Agreement and the Final Cash Collateral Order.

41.     "First Lien Lender" means a Holder of a First Lien Lender Claim.

42.     "Fremont" means Calera VII, LLC f/k/a Fremont Investors VII, LLC, and any non-Debtor affiliate thereof, including without limitation Calera Capital Advisors, LP f/k/a Fremont Partners III, LLC.

43.     "General Unsecured Claim" means a Claim against any of the Debtors other than (a) an Administrative Expense, (b) a Superpriority Claim, (c) a Tax Claim, (d) a Priority Non-Tax Claim, (e) a Secured Claim, (f) a Subordinated Debt Claim, (g) an Intercompany Claim, or (h) a Lender Claim.

44.     "Guarantors" means each of Nellson Northern, Nellson Eastern, Nellson Powder, and Vitex.

45.     "Highland" means Highland Capital Management, L.P.

46.     "Holder" means the beneficial owner of any Claim, Interest, Administrative Expense or Superpriority Claim.

47.     "Houlihan" means Houlihan Lokey Howard & Zukin Capital, Inc.

48.     "Impaired" has the meaning set forth in 11 U.S.C. § 1124.

12

49.     "Indemnification Claims" means any Claim of an Executive against the Debtors for indemnity or reimbursement whether under the by-laws or articles of incorporation of any Debtor or otherwise, including any such Claims entitled to priority as an Administrative Expense.

50.     "Informal Committee" means the Informal Committee of First Lien Lenders that has appeared through counsel in the Chapter 11 Cases, the members of which are Holders of First Lien Lender Claims.

51.     "Intercompany Claim" means any Claim or Administrative Claim asserted against a Debtor by any other Debtor.

52.     "Interest" means an equity security of any of the Debtors within the meaning of section 101(16) of the Bankruptcy Code.

53.     "IRS" means the Internal Revenue Service.

54.     "Lender Claims" means, collectively, the First Lien Lender Claims and the Second Lien Lender Claims.

55.     "Lender Release" means the form of release attached as <u>Exhibit C</u> to the Plan to be executed by the Lenders in favor of the Agent upon execution of the Agent Release, the Executives who execute the Executive Release, the Holders of Subordinated Debt Claims who execute the Subordinated Debt Holder Release, the Informal Committee and each of its members (acting in such capacity), and the Official Committee and each of its members (acting in such capacity), and each of the foregoing parties' respective Representatives.

56.     "Lenders" means, collectively, the First Lien Lenders and the Second Lien Lenders.

13

57. "Lien" means any charge against or interest in property to secure payment or performance of a Claim, debt, or obligation.

58. "Liquidating Debtors" means all or each of the Debtors from and after the Effective Date.

59. "MIP Order" means the *Order Authorizing and Approving Payments Under Management Incentive Plan*, entered by the Bankruptcy Court in the Chapter 11 Cases on July 18, 2006.

60. "Nellson Eastern" means Nellson Nutraceutical Eastern Division, Inc., a Delaware corporation.

61. "Nellson Holdings" means Nellson Holdings, Inc., a Delaware corporation.

62. "Nellson Northern" means Nellson Northern Operating, Inc., a Delaware corporation.

63. "Nellson Powder" means Nellson Nutraceutical Powder Division, Inc., a Delaware corporation.

64. "NIH" means Nellson Intermediate Holdings, Inc., a Delaware corporation.

65. "NNI" means Nellson Nutraceutical, Inc., a Delaware corporation.

66. "Objection Deadline" means the deadline to object to Claims specified in Article IX(A) of the Plan.

14

67.     "Official Committee" means the Official Committee of Unsecured Creditors of the Debtor appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

68.     "Other Secured Claim" means any Secured Claim other than a Lender Claim.

69.     "Person" means an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit or other entity of whatever nature.

70.     "Petition Date" means the date on which each of the Debtors filed their petitions for relief under chapter 11 of the Bankruptcy Code -- January 28, 2006.

71.     "Plan" means this Plan of Liquidation for the Debtors.

72.     "Plan Documents" means the Plan, the Disclosure Statement, and all exhibits and schedules to either of the foregoing.

73.     "Plan Expenses" means the expenses incurred by the Liquidating Debtors following the Effective Date (including the reasonable fees and costs of attorneys and other professionals), for the purpose of (i) prosecuting litigation preserved under the Plan, (ii) resolving Disputed Claims, if any, and effectuating distributions to Creditors under the Plan, (iii) otherwise implementing the Plan and closing the Chapter 11 Cases, or (iv) undertaking any other matter relating to the Plan.

74.     "Plan Representative" means the individual selected to fill this role in accordance with Article VI(C) of the Plan and identified no less than ten (10) days prior to the Confirmation Hearing.

75.     "Priority Non-Tax Claim" means any Claim, other than a Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

76.     "Pro Rata" means proportionately, so that with respect to any distribution, the ratio of (a) (i) the amount of property to be actually or theoretically distributed on account of a particular Claim and/or Interest or particular group of Claims and/or Interests to (ii) the amount of such particular Claim and/or Interest or group of Claims and/or Interests, is the same as the ratio of (b) (i) the amount of property to be actually or theoretically distributed on account of all Claims and/or Interests or groups of Claims and/or Interests sharing in such distribution to (ii) the amount of all Claims and/or Interests or groups of Claims and/or Interests sharing in such distribution.

77.     "Professional Person" shall mean Persons retained or to be compensated pursuant to sections 326, 327, 328, 330, 503(b), and 1103 of the Bankruptcy Code.

78.     "Record Date" means the Effective Date.

79.     "Released Parties" means the parties described in Article X(C) of the Plan.

80.     "Representative" means, as to the referenced Person, such Person's present and former officers, directors, shareholders, trustees, partners and partnerships, members, agents, employees, representatives, professionals, and successors or assigns, in each case solely in their capacity as such.

81.     "Retained Rights of Action" means all Rights of Action belonging to the Estates as of the Effective Date other than those Rights of Action specifically released under the Plan. Avoidance Claims are not Retained Rights of Action. For the avoidance of doubt, Retained Rights of Action include, without limitation, (i) any and all of the Estates' Rights of

16

Action, including claims for patent infringement, against Elan Nutrition, LLC and Elan Nutrition, Inc. or their affiliates; and (ii) the right to object to Claims.

82.     "Rights of Action" means any and all claims, demands, rights, defenses, actions, causes of action, suits, contracts, agreements, obligations, accounts, defenses, offsets, powers and privileges of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, held by any Person against any other Person.

83.     "Schedules" means the schedules filed by the Debtors with the Clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended from time to time.

84.     "Second Lien Credit Agreement" means that certain Second Lien Credit Agreement, dated as of February 11, 2004 (as subsequently amended), among NNI, the Guarantors, certain lending institutions, UBS Securities, LLC, as a co-arranger, Goldman Sachs, as a co-syndication agent and as a co-arranger, and the Agent.

85.     "Second Lien Lender Claims" means Claims under the Second Lien Credit Agreement and the Final Cash Collateral Order.

86.     "Second Lien Lender" means a Holder of a Second Lien Lender Claim.

87.     "Secured Claim" means any Claim of any Person that is secured by a Lien on property in which any of the Debtors or its Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the value, as

17

determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code, of any interest of the claimant in the property of the Estate securing such Claim or subject to setoff.

88.     "Subordinated Debt Claim" means any Claim arising in connection with that certain unsecured, subordinated debt obligation of Nellson Holdings to Fremont in the original principal amount of $39.5 million.

89.     "Subordinated Debt Holder Release" means the form of release attached as Exhibit D to the Plan to be executed by Holders of Subordinated Debt Claims in favor of the Debtors, their Estates, the Agent upon execution of the Agent Release, the Lenders that execute the Lender Release, the Informal Committee and each of its respective members (acting in such capacity), the Official Committee and each of its respective members (acting in such capacity), and each of the foregoing parties' respective Representatives.

90.     "Superpriority Claims" means administrative expenses pursuant to Bankruptcy Code section 364(c)(1) with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(b), 726, 1113 and 1114.

91.     "Supervisory Board" means the individuals selected to fill this role in accordance with Article VI(C) of the Plan and identified no less than ten (10) days prior to the Confirmation Hearing.

92.     "Support Parties" means, together, the Informal Committee, Highland and the Agent.

18

93.     "Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

94.     "Tax Claim" means any Claim for any Tax to the extent that it is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

95.     "Timely Filed" means, with respect to a Claim, Interest or Administrative Expense, that a proof of such Claim or Interest or request for payment of such Administrative Expense was filed with the Bankruptcy Court or the Claims Agent, as applicable, within such applicable period of time fixed by the Plan, statute, or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order (e.g., the Bar Date).

96.     "Unclaimed Property" means all Cash deemed to be "Unclaimed Property" pursuant to Article VIII(E) of the Plan.

97.     "Unimpaired" means, with respect to a Class of Claims or Interests, not Impaired.

98.     "Vitex" means Vitex Foods, Inc., a California corporation.

99.     "Wind-Down" means the wind-down of the Debtors' affairs in accordance with the Plan, as further described in Article VI(D) of the Plan.

19

**III.**

## TREATMENT OF ADMINISTRATIVE EXPENSES AND TAX CLAIMS

### A.    Introduction

As required by the Bankruptcy Code, Administrative Expenses, Superpriority Claims and Tax Claims are not placed into voting Classes. Instead, they are left unclassified, are not considered Impaired, do not vote on the Plan, and receive treatment specified by statute or agreement of the parties. All postpetition payments by or on behalf of any of the Debtors in respect of an Administrative Expense or Tax Claim shall either reduce the Allowed amount thereof or reduce the amount to be paid under the Plan in respect of any Allowed amount thereof; and, unless the Bankruptcy Court has specified otherwise prior to Confirmation, the Debtors or the Liquidating Debtors shall, in their sole and absolute discretion, determine which such method of application to employ.

### B.    Administrative Expenses

Under the Plan, on the Effective Date, each Holder of an Allowed Administrative Expense will receive, in full satisfaction, settlement, release, extinguishment, and discharge of such Allowed Administrative Expense, Cash equal to the full amount of such Allowed Administrative Expense, unless such Holder and any of the Debtors have mutually agreed in writing to other terms, or an order of the Bankruptcy Court provides for other terms; provided, however, that (a) requests for payment of all Administrative Expenses must be filed and served as described in Article XIV(B)(3) of the Plan, and (b) certain different and additional requirements shall apply to the Administrative Expenses of professionals and certain other Persons requesting compensation or reimbursement of expenses pursuant to sections 327, 328,

20

330, 331, 503(b) or 1103 of the Bankruptcy Code as set forth in Article XIV(B)(3) and (4) of the Plan.

## C.     Superpriority Claims

The Superpriority Claims granted to the Lenders pursuant to the Final Cash Collateral Order are hereby Allowed in the amount of $100 million with respect to the First Lien Lenders; provided that (a) no distribution to the First Lien Lenders shall be made on account of such Allowed Superpriority Claims except as set forth in Article IV(B)(3) of the Plan; and (b) any Superpriority Claims held by the Second Lien Lenders shall be subordinated to the Superpriority Claims held by the First Lien Lenders in accordance with the Final Cash Collateral Order and no distribution to the Second Lien Lenders shall be made on account thereof except as set forth in Article IV(B)(4) of the Plan.

## D.     Payments to Lenders' Professionals

The Claims of Houlihan, General Electric Capital Corporation ("GE"), Barclays Bank PLC ("Barclays") and certain funds and/or accounts managed or advised by CypressTree Investment Management, Inc. ("CypressTree") for reimbursement of fees and expenses incurred in connection with Houlihan's representation of the Informal Committee shall be Allowed in the aggregate amount of $2.0 million. On the Effective Date, the Debtors shall pay Houlihan such portion of the $2.0 million in Cash as is necessary to pay amounts due and owing to Houlihan but not heretofore paid to Houlihan by GE, Barclays and CypressTree. None of such fees and expenses of Houlihan shall be subject to the approval of the Bankruptcy Court, and Houlihan shall not be required to file with respect thereto any interim or final fee application with the Bankruptcy Court. The remainder of such $2.0 million that is not paid directly to Houlihan shall

21

be remitted to GE, Barclays and Cypress Tree in partial reimbursement of the amounts heretofore paid by them to Houlihan and in such amounts as directed by the Informal Committee in its sole discretion.

In addition, on or as soon as practicable after the Effective Date, the Debtors shall pay (i) the outstanding fees and expenses of the professionals retained by the Agent; (ii) the outstanding fees and expenses of the attorneys retained by the Informal Committee; (iii) the sum of $400,000 in Cash to Highland for reimbursement of attorneys' fees incurred in the Chapter 11 Cases; and (iv) the sum of $60,000 in Cash to New York Life Insurance Company for reimbursement of attorneys' fees incurred in the Chapter 11 Cases. None of the foregoing fees and expenses of the Lenders' professionals shall be subject to the approval of the Bankruptcy Court, and no interim or final fee applications shall need to be filed with the Bankruptcy Court with respect to such fees and expenses.

E.      **Tax Claims**

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Tax Claims are not to be classified and thus Holders of Tax Claims are not entitled to vote to accept or reject the Plan.

As required by section 1129(a)(9) of the Bankruptcy Code, on or as soon as practicable after the Effective Date, each Holder of an Allowed Tax Claim against any of the Debtors will receive, in full satisfaction, settlement, release, extinguishment, and discharge of such Allowed Tax Claim, Cash equal to the portion of the Allowed Tax Claim due and payable on or prior to the Effective Date according to applicable non-bankruptcy law. Any Allowed Tax Claim (or portion thereof) against any of the Debtors not yet due and payable as of the Effective Date will be paid by the Debtors no later than when due and payable under applicable non-

22

bankruptcy law without regard to the commencement of the Chapter 11 Cases; provided that (1) any default prior to the Effective Date with respect to Tax Claims against any of the Debtors shall be deemed cured and (2) upon request of any of the Debtors, the Bankruptcy Court shall determine the amount of any Disputed Claim for, or issues pertaining to, Tax Claims. Any Holder of a Tax Claim may agree to accept different treatment as to which the Debtors and such Holder have agreed upon in writing.

IV.

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### A.     Summary

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

In accordance with section 1122 of the Bankruptcy Code, the Plan provides for the classification of seven (7) Classes of Claims and/or Interests. Administrative Expenses and Tax Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code.

23

**B. Classification and Treatment of Claims and Interests**

    The treatment of each Class of Claims and/or Interests is set forth below. Unless the Bankruptcy Court has specified otherwise prior to Confirmation, the Debtors shall, in their sole and absolute discretion, determine whether a postpetition payment by or on behalf of any of the Debtors in respect of a Claim either (x) shall reduce the Allowed amount thereof or (y) shall reduce the amount to be paid under the Plan in respect of any Allowed amount thereof.

    **1.**   **Class 1 – Priority Non-Tax Claims**

    a.   <u>Classification</u>: Class 1 consists of all Priority Non-Tax Claims against any of the Debtors, specifically identified as follows.

    b.   <u>Treatment</u>: At the election of the Debtors, the Holder of each Priority Non-Tax Claim shall receive, in full satisfaction, settlement, release, extinguishment, and discharge of such Priority Non-Tax Claim, a Cash payment equal to the Allowed amount of such Claim (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim; or (b) in accordance with the terms and conditions of agreements that either have been or may be approved by the Bankruptcy Court between the Holders of such Claims and any of the Debtors, as the case may be. Any Holder of a Priority Non-Tax Claim may agree to accept different treatment as to which the Debtors and such Holder have agreed upon in writing.

    c.   <u>Impairment/Voting</u>: Class 1 is Unimpaired. Class 1 therefore is conclusively presumed to have accepted the Plan and Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

24

## 2. **Class 2 – Other Secured Claims**

a. <u>Classification</u>: Class 2 consists of all Other Secured Claims (if any such Claims exist).

b. <u>Treatment</u>: On or as soon as practicable after the Effective Date, at the election of the Debtors and in full satisfaction, settlement, release, extinguishment, and discharge of such Other Secured Claim, each Holder of an Allowed Other Secured Claim shall, on account of such Claim, either: (i) be paid in Cash in full, (ii) have surrendered to such Holder, without representation or warranty, the collateral securing its Claim, (iii) notwithstanding any contractual provision or applicable law that entitles the Holder of such Other Secured Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (A) be paid a cure of any such default that occurred prior to the Effective Date, other than a default of a kind specified in section 365(b)(2) of this title, (B) have reinstated the maturity of such Other Secured Claim as such maturity existed before such default, (C) be compensated for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law, and (D) otherwise not have altered the legal, equitable, or contractual rights to which such Other Secured Claim entitles the Holder of such Claim, or (iv) have left unaltered the legal, equitable, and contractual rights to which such Claim entitles the Holder of such Claim. In the case of option (ii) or (iii), in the event that any such Other Secured Claim is not completely satisfied by such distribution, any deficiency against the Debtors will be treated as a General Unsecured Claim. Any Holder of an Other Secured Claim may agree to accept different treatment as to which the Debtors and such Holder have agreed upon in writing.

25

c.     Impairment/Voting:  Class 2 is Unimpaired.  Class 2 is therefore conclusively presumed to have accepted the Plan, and Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

3.     **Class 3 – First Lien Lender Claims**

a.     Classification:  Class 3 consists of the First Lien Lender Claims against any of the Debtors.

b.     Treatment:  On or as soon as practicable after the Effective Date or such other date as First Lien Distributable Assets become available for distribution, each First Lien Lender shall receive, in full satisfaction, settlement, release, extinguishment, and discharge of such First Lien Lender Claim, the following:  (i) a Pro Rata share (calculated as a percentage of First Lien Lender Claims) of the First Lien Distributable Assets to be distributed to the Agent under the Plan and distributed by the Agent to the First Lien Lenders in accordance with the First Lien Credit Agreement; (ii) a release of any Rights of Action held by the Debtors, their Estates, and the Official Committee and its members (acting in such capacity); and (iii) only as to those First Lien Lenders that execute the Lender Release, a release of any Rights of Action held by the Agent upon execution of the Agent Release, the Executives that execute the Executive Release, and the Holders of Subordinated Debt Claims who execute the Subordinated Debt Holder Release.  All distributions to the First Lien Lenders under the Plan shall be effectuated through the Agent (i.e., the Debtors or the Liquidating Debtors shall distribute Cash to the Agent and the Agent shall make distributions to the First Lien Lenders).  The existing Liens securing the First Lien Lender Claims will be retained subject to the terms of the Plan and the distributions

26

contemplated hereby. The First Lien Lender Claims are deemed Allowed in the full amount reflected on the Agent's books and records as of the Record Date.

      c.    <u>Impairment/Voting</u>: Class 3 is Impaired. Holders of Class 3 are therefore entitled to vote to accept or reject the Plan.

    **4.**    **<u>Class 4 – Second Lien Lender Claims</u>**

      a.    <u>Classification</u>: Class 4 consists of the Second Lien Lender Claims against any of the Debtors.

      b.    <u>Treatment</u>: On or as soon as practicable after the Effective Date, each Second Lien Lender shall receive, in full satisfaction, settlement, release, extinguishment, and discharge of such Second Lien Lender Claim, the following: (i) a Pro Rata share (calculated as a percentage of Second Lien Lender Claims as of the Record Date) of $2.0 million in Cash to be distributed to the Agent under the Plan and distributed by the Agent to the Second Lien Lenders in accordance with the Second Lien Credit Agreement; (ii) a release of any Rights of Action held by the Debtors, their Estates, and the Official Committee and its members (acting in such capacity); and (iii) only as to those Second Lien Lenders that execute the Lender Release, a release of any Rights of Action held by the Agent upon execution of the Agent Release, the Executives that execute the Executive Release, and the Holders of Subordinated Debt Claims who execute the Subordinated Debt Holder Release. All distributions to the Second Lien Lenders under the Plan shall be effectuated through the Agent (<u>i.e.</u>, the Debtors shall distribute Cash to the Agent and the Agent shall make distributions to the Second Lien Lenders). The existing Liens securing the Second Lien Lender Claims shall be extinguished upon such Cash

payment. The Second Lien Lender Claims are deemed Allowed in the full amount reflected on the Agent's books and records as of the Record Date.

      c.    <u>Impairment/Voting</u>: Class 4 is Impaired. Holders of Class 4 are therefore entitled to vote to accept or reject the Plan.

     5.    **<u>Class 5 – General Unsecured Claims</u>**

      a.    <u>Classification</u>: Class 5 consists of the General Unsecured Claims against any of the Debtors.

      b.    <u>Treatment</u>: Holders of General Unsecured Claims against the Debtors shall receive no distributions or recoveries on account of such Claims and such Claims shall be extinguished on the Effective Date. However, Holders of General Unsecured Claims shall benefit from the Debtors' general release of Avoidance Claims set forth in Article X(D) of the Plan.

      c.    <u>Impairment/Voting</u>: Class 5 is Impaired. Because Holders of Interests in Class 5 receive no recovery on account of such Claims under the Plan, they are conclusively presumed to reject the Plan.

     6.    **<u>Class 6 – Subordinated Debt Claims</u>**

      a.    <u>Classification</u>: Class 6 consists of the Subordinated Debt Claims.

      b.    <u>Treatment</u>: On the Effective Date, in full satisfaction, settlement, release, extinguishment, and discharge of (a) all rights of Holders of Subordinated Debt Claims against Nellson Holdings, including but not limited to any rights of Nellson Holdings to assert Intercompany Claims, and (b) all Claims and Administrative Expenses asserted by the Holders of the Subordinated Debt Claims in any capacity against any of the Debtors, each Holder of a

28

Subordinated Debt Claim that executes the Subordinated Debt Holder Release shall be released of any Rights of Action held by the Debtors, their Estates, the Agent upon execution of the Agent Release, the Lenders that execute the Lender Release, the Executives that execute the Executive Release, and the Official Committee and its members (acting in such capacity). Except as set forth in the foregoing sentence, Holders of Subordinated Debt Claims shall receive no distributions or recoveries on account of such Claims.

      c.      Impairment/Voting: Class 6 is Impaired. Holders of Class 6 are therefore entitled to vote to accept or reject the Plan.

    **7.**    **Class 7 – Interests in the Debtors**

      a.      Classification: Class 7 consists of Interests in the Debtors.

      b.      Treatment: Holders of Interests in the Debtors shall receive no distributions or recoveries on account of such Interests and such Interests shall be extinguished on the Effective Date.

      c.      Impairment/Voting: Class 7 is Impaired. Because Holders of Interests in Class 7 receive no recovery on account of such Interests under the Plan, they are conclusively presumed to reject the Plan.

**V.**

**ACCEPTANCE OR REJECTION OF PLAN**

**A.**    **Identification of Unimpaired Classes**

    The following Classes are not Impaired (i.e., are Unimpaired) under the Plan:

    **1.**    **Class 1 – Priority Non-Tax Claims**

    **2.**    **Class 2 – Other Secured Claims**

29

**B.** **Identification of Impaired Classes**

The following Classes of Claims and Interests are Impaired under the Plan.

1. **Class 3 – First Lien Lender Claims**

2. **Class 4 – Second Lien Lender Claims**

3. **Class 5– General Unsecured Claims**

4. **Class 6 – Subordinated Debt Claims**

5. **Class 7 – Interests in the Debtors**

**C.** **Classes Permitted and Not Permitted to Vote**

Classes 1 and 2 are Unimpaired. Holders of Claims or Interests in such Classes are conclusively presumed pursuant to section 1126(f) of the Bankruptcy Code to have accepted the Plan and therefore shall <u>not</u> be entitled to vote to accept or reject the Plan.

Classes 3 through 7 are Impaired. Holders of Claims and Interests in Classes 3, 4 and 6 are permitted to vote to accept or reject the Plan. Holders of Claims and Interests in Classes 5 and 7 are conclusively presumed to reject the Plan. An Impaired Class of Claims that votes shall have accepted the Plan if (a) the Holders (other than any Holder designated by the Bankruptcy Court based on their vote or its solicitation not being in good faith under Bankruptcy Code section 1126(e)) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated under Bankruptcy Code section 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. An Impaired Class of Interests that votes shall have accepted the Plan if the Holders (other than any Holder designated under section 1126(e)) of at least two-thirds in amount of the Allowed Interests actually voting in such Class

30

have voted to accept the Plan.

**D.      Nonconsensual Confirmation**

        In the event any Class of Claims or Interests votes to reject the Plan, the Debtors

intend to request that the Bankruptcy Court confirm the Plan notwithstanding such rejection

pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and

equitable and does not discriminate unfairly as to the Holders of any Class of Claims or Interests.

**E.      Postpetition Interest**

        Nothing in the Plan or the Disclosure Statement shall be deemed to entitle the

Holder of a Claim to receive postpetition interest on account of such Claim.

## VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.      Continued Corporate Existence and Vesting of Assets**

        The Debtors will, as the Liquidating Debtors, continue to exist on and after the

Effective Date as separate corporate Entities, with all of the powers of corporations under the

applicable non-bankruptcy law, and without prejudice to any right to alter or terminate their

existence (whether by merger or otherwise), provided that the Liquidating Debtors' sole purpose

from and after the Effective Date will be to make distributions to Creditors consistent with the

Plan and to otherwise effectuate the Wind-Down.  Except as otherwise provided in the Plan, on

and after the Effective Date, all Distributable Assets and property of the Estates of the Debtors,

including all Retained Rights of Action, and any property acquired by the Debtors under or in

connection with the Plan will vest in the Liquidating Debtors free and clear of all Claims, Liens,

charges, other encumbrances and Interests.

31

**B.** **Retained Rights of Action**

Unless a Right of Action or objection to Claim is, in writing, expressly waived, relinquished, released, assigned, compromised, or settled in the Plan, or in a Final Order, all rights with respect to such Retained Right of Action or objections to Claims are expressly preserved for the benefit of, and fully vested in, the Liquidating Debtors.

The Liquidating Debtors may pursue, or decline to pursue, the Retained Rights of Action and objections to Claims, as appropriate, in the business judgment of the Plan Representative and the Supervisory Board. The Liquidating Debtors may settle, release, sell, assign, otherwise transfer, or compromise, Retained Rights of Action and/or objections to Claims without need for notice or order of the Bankruptcy Court.

**C.** **Corporate Governance**

From and after the Effective Date, subject to the oversight of the Supervisory Board, the Liquidating Debtors shall be managed and administered through the Plan Representative, who shall be appointed as sole officer of each of the Liquidating Debtors, and shall have full authority to execute the provisions of the Plan. The initial Plan Representative shall be selected by the Debtors prior to the Confirmation Hearing, with the consent of the Support Parties. Any successor thereto shall be appointed by the Supervisory Board after the Effective Date in accordance with applicable corporate governance documents.

The Supervisory Board shall be appointed as directors for each of the Liquidating Debtors pursuant to 8 Delaware Code §303, with supervisory authority over the Plan Representative. The Supervisory Board shall consist of the following three (3) Persons: (a) one designee of the Informal Committee; (b) one designee of Highland; and (c) one designee of GSC

32

Partners. In the event that a member of the Supervisory Board can no longer carry out its duties as a director (by reason of death, resignation or disability) (the "Director Vacancy"), the party that designated such member (that is, either the Informal Committee, Highland, or GSC Partners, as applicable) shall appoint a successor designee within 90 days; provided, however, that if the Informal Committee, Highland or GSC Partners, as applicable, fails to designate a successor Supervisory Board Member within 90 days of such Director Vacancy, the Agent shall select the designee with the consent of the majority of First Lien Lenders; provided, further, however, that if Highland or GSC Partners is not a First Lien Lender, or the Informal Committee is disbanded, such party may not appoint a successor at the time of any such appointment, but rather such designee shall be appointed by the Agent with the consent of the majority of First Lien Lenders.

## D. **Wind-Down**

The Liquidating Debtors, through the Plan Representative, shall make distributions to Creditors consistent with the Plan and otherwise hold and liquidate all Distributable Assets and property of the Estates for the benefit of Creditors, in accordance with the provisions of the Plan. The Liquidating Debtors, the Plan Representative, and the Supervisory Board shall not be required to post a bond in favor of the United States.

The Liquidating Debtors, acting through the Plan Representative, shall have the power and authority to perform the following acts (together, the "Wind-Down"), in addition to any powers granted by law or conferred by any other provision of the Plan and orders of the Bankruptcy Court; provided, however, that enumeration of the following powers shall not be considered in any way to limit or control the power of the Liquidating Debtors or the Plan Representative, subject to the authority of the Supervisory Board, to act as specifically

33

authorized by any other provision of the Plan or orders of the Bankruptcy Court, and to act in
such manner as the Plan Representative may deem necessary, or desirable to discharge all
obligations assumed by the Liquidating Debtors as provided herein, and to conserve and protect
the Distributable Assets, or to confer on Creditors the benefits intended to be conferred upon
them by the Plan; including without limitation and by example only:

> (1)      Determine Tax issues or liabilities in accordance with Bankruptcy Code §505);
>
> (2)      Resolve any objections to the allowance or priority of Claims, Administrative Expenses or Interests;
>
> (3)      Resolve any dispute as to the treatment necessary to reinstate a Claim, Administrative Expense or Interest pursuant to the Plan;
>
> (4)      Distribute Cash in the Estates to Creditors consistent with the terms of the Plan;
>
> (5)      Perfect and secure the Liquidating Debtors' right, title and interest to property of the Estates;
>
> (6)      Recover and, to the extent possible, sell and convert the property of the Estates to Cash, and distribute the net proceeds consistent with the terms of the Plan;
>
> (7)      Manage and protect property of the Estates and distribute the net proceeds consistent with the terms of the Plan;
>
> (8)      Wind-up the affairs of the Debtors' subsidiaries and affiliates;
>
> (9)      Purchase or continue insurance to protect the Liquidating Debtors, the Plan Representative, and property of the Estates;
>
> (10)     Deposit Estate funds, draw checks and make disbursements thereof consistent with the terms of the Plan;
>
> (11)     Employ, retain and compensate, and discharge and dismiss, without further order of the Bankruptcy Court, Professional Persons as the Plan Representative may deem necessary or desirable to assist in fulfilling the purposes of the Plan, including the continued retention and payment of Professional Persons in connection with any ongoing litigation or other matter pursued or conducted by the Debtors;

34

(12)     Commence or prosecute in the name of the Debtors (or any of them), any lawsuit or other legal or equitable action (except to the extent released pursuant to the terms of the Plan), including, without limitation, filing objections to or estimation of Claims, and prosecuting Retained Rights of Action, in any court of competent jurisdiction, which are necessary to carry out the terms and conditions of the Plan;

(13)     Settle, compromise or adjust, pursuant to the standards of Bankruptcy Rule 9019 (which standards, but not a requirement for Bankruptcy Court approval, shall be deemed to apply to all post-Effective Date settlements), any disputes or controversies in favor of, or against, any Debtor;

(14)     Incur and pay all Plan Expenses and any reasonable costs and expenses incident to the performance of the duties of the Liquidating Debtors and the Plan Representative under the Plan, including without limitation, rent for office space and storage, office supplies, travel and expense reimbursement, insurance, and other obligations;

(15)     Prepare and file tax returns, as mandated by applicable local, state, federal and foreign law;

(16)     Seek entry of a final decree at the appropriate time; and

(17)     Take such other action as the Plan Representative may determine to be necessary or desirable to carry out the purpose of the Plan.

## E.     **Funding for the Plan**

The Debtors' obligations under the Plan and the fees and expenses of the

Liquidating Debtors will be funded out of existing Cash in the Estates. Specifically, the sum of

$500,000 will be set aside out of the Debtors' existing Cash to fund Plan Expenses and the

Wind-Down. Any unused Cash set aside to fund Plan Expenses and the Wind-Down shall be

distributed to the First Lien Lenders as First Lien Distributable Assets in accordance with the

Plan. Any additional Cash proceeds that may be realized by the Liquidating Debtors from and

after the Effective Date shall be distributed to the First Lien Lenders as First Lien Distributable

Assets in accordance with the Plan.

35

## F.    **Substantive Consolidation**

In furtherance of the settlements contained in the Plan, the entry of the Confirmation Order shall constitute approval by the Bankruptcy Court, pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, as of the Effective Date, of the substantive consolidation of the Debtors and their respective Estates, solely for purposes of voting and distributions under the Plan. Pursuant to the Confirmation Order, on and after the Effective Date, (i) all Distributable Assets to be used for distributions to Creditors of any of the Debtors will be treated as though they were merged into the Liquidating Debtors; (ii) any obligation of any Debtor and all guarantees thereof executed by, or joint liability of, any of the Debtors will be treated as one obligation of the Liquidating Debtors for distribution purposes pursuant to this Plan; and (iii) any Claims filed against any Debtors shall be treated as a single Claim filed against the Liquidating Debtors for distribution purposes pursuant to the Plan.

Notwithstanding the foregoing, the substantive consolidation of the Debtors for voting and distribution purposes shall not affect or impair (i) any rights, Claims or remedies or defenses of (or between) the separate Debtors as of the Petition Date, including with respect to any Retained Rights of Action ; (ii) the legal and organizational structure of the Debtors, (ii) any Liens that are maintained, recognized, or preserved under the Plan; and (iii) claims under or with respect to any insurance policy of any Debtor (or any right to the proceeds of any such policy or policies).

The Plan shall be deemed to be a motion by the Debtors for substantive consolidation. Any objection by an affected Creditor to such consolidation shall be treated as an

36

objection to Confirmation and shall be determined by the Bankruptcy Court in the context of considering Confirmation of the Plan.

## G.    Settlement of Intercompany Matters

Upon the Effective Date, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, each Debtor and their successors and assigns hereby waive, release and discharge each other and all of their respective successors from any and all Intercompany Claims and Rights of Action amongst and between any or all of the Debtors, which waiver, release and discharge shall be effective as a bar to all actions, causes of action, suits, Claims, Liens, or demands of any kind with respect to any Intercompany Claim or Right of Action amongst or between any or all of the Debtors.

## H.    Settlement with the Lenders

Upon the Effective Date, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, all distributions to be made under the Plan (including the release of any Avoidance Claims) shall be in full satisfaction of, and represent a settlement of, all rights, disputes and claims held or asserted by the recipient of such distributions against the Debtors, their Estates, the Agent, any Lender, the Informal Committee or the Official Committee with respect to the Chapter 11 Cases, the Superpriority Claims, the Lender Claims, the General Unsecured Claims, the Committee Agreement, any intercreditor agreements between and among the First Lien Lenders and the Second Lien Lenders, and the valuation of the unencumbered portion of the common stock of Nellson Nutraceutical Canada, Inc.  In consideration and settlement of the Lender Claims in accordance with the Plan and any other disputes that may exist between the Lenders and the Debtors, the Agent and each Holder of a Lender Claim shall

37

be deemed released of any Rights of Action held by the Debtors, their Estates, and the Official Committee and its members (acting in such capacity), including without limitation any Rights of Action that might otherwise be asserted by the Official Committee or its members under the Committee Agreement. Further, each Holder of a Lender Claim that executes the Lender Release shall be deemed released of any Rights of Action held by the Agent upon execution of the Agent Release, the Executives who execute the Executive Release, and the Holders of Subordinated Debt Claims upon execution of the Subordinated Debt Holder Release.

## I.     Settlement with Holders of Subordinated Debt Claims

Upon the Effective Date, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, in consideration and settlement of (a) all rights of Holders of Subordinated Debt Claims against Nellson Holdings, including but not limited to any rights of Nellson Holdings to assert Intercompany Claims, and (b) all Claims and Administrative Expenses asserted by Holders of Subordinated Debt Claims against any of the Debtors, the Holders of the Subordinated Debt Claims shall be deemed released of any Rights of Action held by the Debtors, their Estates, the Agent upon execution of the Agent Release (and subject to the terms of the Agent Release), the Lenders that execute the Lender Release (and subject to the terms of the Lender Release), and the Official Committee and its members (acting in such capacity), provided that each Holder of an Allowed Subordinated Debt Claim executes the Subordinated Debt Holder Release. The Holders of Allowed Subordinated Debt Claims shall receive no distributions or recoveries on account of such Claims other than the releases contemplated under the Plan.

38

**J.** **Settlement with Debtors' Officers and Directors; Disallowance of**

    **Indemnification Claims**

Upon the Effective Date, pursuant to sections 502(e)(1)(B) and 1123(b)(3)(A) of

the Bankruptcy Code and Bankruptcy Rule 9019, (i) all Indemnification Claims of all of the

Debtors' current and former officers and directors (the "Executives") shall be disallowed,

provided however, that such disallowance shall not impair the right of any Executive as an

insured to obtain proceeds from any applicable insurance coverage on account of such Claims;

and (ii) in consideration and settlement of the foregoing, each Executive that executes the

Executive Release shall be deemed released of any Rights of Action held by the Debtors, their

Estates, the Agent upon execution of the Agent Release (and subject to the terms of the Agent

Release), the Lenders that execute the Lender Release (and subject to the terms of the Lender

Release), the Holders of Subordinated Debt Claims upon execution of the Subordinated Debt

Holder Release (and subject to the terms of the Subordinated Debt Holder Release), and the

Official Committee and its members (acting in such capacity).

**K.** **Corporate Action/Dissolution**

On the Effective Date, the matters under the Plan involving or requiring corporate

action of the Debtors, including but not limited to, actions requiring a vote or other approval of

the board of directors or shareholders or execution of all documentation incident to the Plan,

shall be deemed to have been authorized by the Confirmation Order and to have occurred and be

in effect from and after the Effective Date without any further action by the Bankruptcy Court or

the officers and directors of the Debtors. On the Effective Date, all officers and directors of the

Debtors shall be deemed removed from such positions and the Debtors' charters shall be deemed

39

amended to prohibit (1) the issuance of nonvoting equity securities, or (2) the existence of securities possessing an inappropriate distribution of voting power, all as more specifically required and described in section 1123(a)(6) of the Bankruptcy Code.

Upon entry of a final decree, the Liquidating Debtors shall be deemed dissolved and wound up without any further action required by the Liquidating Debtors and the Debtors' shareholders or boards of directors.

## L.    Interests in Affiliates and Subsidiaries

As of the Effective Date, except as expressly provided in the Plan, the Liquidating Debtors shall retain any stock or interests they may hold in their subsidiaries or affiliates and retain any rights to which such stock or interests may be entitled under applicable law with respect to such shares or other interests. After the Effective Date, any Liquidating Debtor may sell, transfer, assign or otherwise dispose of such shares or interests as permitted by applicable law.

## M.    Payment of Plan Expenses

The Liquidating Debtors may pay all reasonable Plan Expenses without further notice to Creditors or Holders of Interests or approval of the Bankruptcy Court; provided, however, that copies of monthly invoices of the Plan Expenses, including the fees and expenses of professionals, shall be provided to the Support Parties for review. The Support Parties shall have fifteen (15) days after receipt of the invoices to object to such invoices (which objection should be in writing and delivered to the Liquidating Debtors). The Liquidating Debtors and the objecting party shall seek to resolve any objection within ten (10) days of such objection and, if the objection cannot be resolved, either the Liquidating Debtors or the objecting party shall be

40

permitted to seek a ruling by this Bankruptcy Court as to the reasonableness of such fees and/or

expenses on at least five (5) business days notice. If the Support Parties do not object to the

monthly invoice(s), or object only to a portion of the invoice(s), within the foregoing fifteen (15)

day period, the Liquidating Debtors shall be entitled to pay the monthly invoice(s) for those fees

and expenses for which there is no objection.

**N.**     **Dissolution of the Official Committee**

As of the Effective Date, the Official Committee shall withdraw from any

pending appeal of the MIP Order with prejudice and thereupon the Official Committee shall be

dissolved, provided however, that notwithstanding such dissolution, the Official Committee's

professionals may seek payment of any unpaid Administrative Expenses pursuant to the Plan.

**VII.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.**     **Rejection of Executory Contracts and Unexpired Leases**

Except for any executory contracts or unexpired leases: (i) that previously were

assumed or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the

Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such

contract or lease has been filed and served prior to Confirmation; or (iii) that constitute contracts

of insurance in favor of, or that benefit, the Debtors or the Estates, each executory contract and

unexpired lease entered into by the Debtors prior to the Petition Date that has not previously

expired or terminated pursuant to it own terms shall be deemed rejected pursuant to section 365

of the Bankruptcy Code as of the Effective Date. The Confirmation Order shall constitute an

Order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the

Bankruptcy Code, as of the Effective Date.

**B.      Bar Date for Rejection Damages**

If the rejection of an executory contract or unexpired lease pursuant to the Plan or

otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim

shall be forever barred and shall not be enforceable against the Debtors, the Liquidating Debtors

or their Estates unless a proof of Claim is filed and served on the Debtors and their counsel

within 30 days after the earlier of (a) Confirmation or (b) service of a notice that the executory

contract or unexpired lease has been rejected.  All such Claims for which proofs of Claim are

required to be filed, if Allowed, will be, and will be treated as, General Unsecured Claims,

subject to the provisions of the Plan.

**VIII.**

**DISTRIBUTIONS AND RELATED MATTERS**

**A.      Dates of Distribution**

The sections of the Plan on treatment of Administrative Expenses, Claims, and

Interests specify the times for distributions.  Whenever any payment or distribution to be made

under the Plan shall be due on a day other than a Business Day, such payment or distribution

shall instead be made, without interest, on the immediately following Business Day.

Distributions due on the Effective Date will be paid on such date or as soon as practicable

thereafter, provided that if other provisions of the Plan require the surrender of securities or

establish other conditions precedent to receiving a distribution, the distribution may be delayed

until such surrender occurs or conditions are satisfied.

If, under the terms of the Plan, the resolution of a particular Disputed Claim, *e.g.,*

it is Disallowed, entitles other Holders of Claims to a further distribution, either (a) the

Liquidating Debtors may make such further distribution as soon practicable after the resolution

of the Disputed Claim or (b) if the further distribution is determined in good faith, by the

Liquidating Debtors to be less than $100 for any Creditor, then, in order to afford the Liquidating

Debtors an opportunity to minimize costs and aggregate such distributions, the Liquidating

Debtors may make such further distribution any time prior to sixty (60) days after the Final

Resolution Date.

**B.**    **Cash Distributions**

Distributions of Cash may be made either by check drawn on a domestic bank or

wire transfer from a domestic bank, at the option of the Liquidating Debtors, except that Cash

payments made to foreign Creditors may be made in such funds and by such means as are

necessary or customary in a particular foreign jurisdiction.

**C.**    **Rounding of Payments**

Whenever payment of a fraction of a cent would otherwise be called for, the

actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  To the

extent Cash remains undistributed as a result of the rounding of such fraction to the nearest

whole cent, such Cash shall be treated as "Unclaimed Property" under the Plan.

**D.**    **Disputed Claims**

Notwithstanding all references in the Plan to Claims that are Allowed, in

undertaking the calculations concerning Allowed Claims or Allowed Administrative Expenses

under the Plan, including the determination of the amount or number of distributions due to the

43

Holders of Allowed Claims and Allowed Administrative Expenses, each Disputed Claim shall be treated as if it were an Allowed Claim or Allowed Administrative Expense, except that if the Bankruptcy Court estimates the likely portion of a Disputed Claim to be Allowed or authorized or otherwise determines the amount or number which would constitute a sufficient reserve for a Disputed Claim (which estimates and determinations may be requested by the Debtors), such amount or number as determined by the Bankruptcy Court shall be used as to such Claim.

Distributions of non-Cash consideration due in respect of a Disputed Claim shall be held and not made pending resolution of the Disputed Claim.

After an objection to a Disputed Claim is withdrawn, resolved by agreement, or determined by Final Order, the distributions due on account of any resulting Allowed Claim, Allowed Interest or Allowed Administrative Expense shall be made by the Liquidating Debtors. Such distribution shall be made within forty-five (45) days of the date that the Disputed Claim becomes an Allowed Claim or Allowed Administrative Expense. No interest shall be due to a Holder of a Disputed Claim based on the delay attendant to determining the allowance of such Claim, Interest or Administrative Expense.

**E. Undeliverable and Unclaimed Distributions**

If any distribution under the Plan is returned to the Liquidating Debtors as undeliverable or the check or other similar instrument or distribution by the Liquidating Debtors remains uncashed or unclaimed, as applicable, for one hundred twenty (120) days, such Cash shall be deemed to be "Unclaimed Property." Upon property becoming Unclaimed Property, it immediately shall be revested in the Liquidating Debtors.

44

Pending becoming Unclaimed Property, such Cash will remain in the possession of the Liquidating Debtors, and, if the Liquidating Debtors are notified in writing of a new address for the relevant Holder, they shall cause distribution of the Cash within forty-five (45) days thereafter.

Once there becomes Unclaimed Property for a Holder, no subsequent distributions for such Holder which may otherwise be due under the Plan will accrue or be held for such Holder, provided that, if the applicable agent is notified in writing of such Holder's then-current address and status as a Holder under the Plan, thereafter, the Holder will become entitled to its share of distributions, if any, which first become due after such notification.

**F.**     **Compliance with Tax Requirements**

The Liquidating Debtors shall comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities in connection with making distributions pursuant to the Plan.

In connection with each distribution with respect to which the filing of an information return (such as an IRS Form 1099 or 1042) or withholding is required, the Liquidating Debtors shall file such information return with the IRS and provide any required statements in connection therewith to the recipients of such distribution, or effect any such withholding and deposit all moneys so withheld to the extent required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Liquidating Debtors, the Liquidating Debtors may, in their sole option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is

45

received; provided, however, that the Liquidating Debtors shall not be obligated to liquidate any securities to perform such withholding.

## G. **Record Date in Respect to Distributions**

Except as set forth below, the record date and time for the purpose of determining which Persons are entitled to receive any and all distributions on account of any Allowed Claims or Interests, irrespective of the date of or number of distributions, shall be the same as the Record Date.

At the date and time of the Record Date, the Agent's registers with respect to the Lender Claims shall be deemed closed for purposes of determining whether a Holder of a Lender Claim is a record holder entitled to distributions under the Plan. Neither the Liquidating Debtors nor the Agent shall have any obligation to recognize, for purposes of distributions pursuant to or in any way arising under the Plan, any Lender Claim or claim arising therefrom or in connection therewith that is transferred after the time of the Record Date. Instead, they all shall be entitled to recognize and deal for distribution purposes with only those record holders of the Lender Claims as of the Record Date irrespective of the number of distributions to be made under the Plan or the date of such distributions.

## H. **Reserves**

In making any distributions in respect of Claims under this Plan, the Liquidating Debtors shall reserve an appropriate and adequate amount of Cash on account of any unresolved Disputed Claims. The Liquidating Debtors shall make a corrective distribution following the successful resolution of any Disputed Claim on the earlier of the next regularly scheduled distribution date or each six month anniversary of the Effective Date.

## LITIGATION, OBJECTIONS TO CLAIMS, AND DETERMINATION OF TAXES

### A.    Litigation; Objections to Claims; Objection Deadline

Except as may be expressly provided otherwise in the Plan, the Liquidating

Debtors shall be responsible for pursuing Retained Rights of Action, any objection to the

allowance of any Claim, and the determination of Tax issues and liabilities.

As of the Effective Date, the Liquidating Debtors shall have exclusive authority to

file objections, settle, compromise, withdraw or litigate to judgment objections to Claims.

Unless another date is established by the Bankruptcy Court (which may so act without notice or

hearing) or is established by other provisions of the Plan, any objection to a Claim shall be filed

with the Bankruptcy Court and served on the Person holding such Claim within ninety (90) days

after the Effective Date (the "Objection Deadline"), provided that the Liquidating Debtors may

seek extension(s) thereof subject to Bankruptcy Court approval.

In addition to any other available remedies or procedures with respect to Tax

issues or liabilities, the Liquidating Debtors, at any time, may utilize (and receive the benefits of)

section 505 of the Bankruptcy Code with respect to: (1) any Tax issue or liability relating to an

act or event occurring prior to the Effective Date; or (2) any Tax liability arising prior to the

Effective Date.  If the Liquidating Debtors utilize section 505(b) of the Bankruptcy Code: (1) the

Bankruptcy Court shall determine the amount of the subject Tax liability in the event that the

appropriate governmental entity timely determines a Tax to be due in excess of the amount

indicated on the subject return; and (2) if the prerequisites are met for obtaining a discharge of

Tax liability in accordance with section 505(b) of the Bankruptcy Code, the Liquidating Debtors

47

shall be entitled to such discharge which shall apply to any and all Taxes relating to the period covered by such return.

## B.     Temporary or Permanent Resolution of Disputed Claims

The Liquidating Debtors may request, at any time prior to the Effective Date or on and after the Effective Date, that the Bankruptcy Court estimate any contingent or unliquidated Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, irrespective of whether any party has previously objected to such Disputed Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any contingent or unliquidated Disputed Claim at any time during litigation concerning any objection to the Disputed Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Disputed Claim, that estimated amount would constitute either the Allowed amount of such Disputed Claim or a maximum limitation on such Disputed Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Disputed Claim, the Liquidating Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on account of such Disputed Claim. In addition, the Liquidating Debtors may resolve or adjudicate any Disputed Claim in the manner in which the amount of such Claim, Interest or Administrative Expense and the rights of the Holder of such Claim, Interest or Administrative Expense would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced. All of the aforementioned objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

48

## C.   Setoffs

The Liquidating Debtors may, pursuant to sections 553 or 558 of the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim, Interest or Administrative Expense and the distributions to be made pursuant to the Plan on account of such Claim, Interest or Administrative Expense (before any distribution is made on account of such Claim, Interest or Administrative Expense), the Retained Rights of Action of any nature that the Liquidating Debtors may hold against the Holder of such Allowed Claim, Interest or Administrative Expense. Neither the failure to set off nor the allowance of any Claim, Interest or Administrative Expense hereunder will constitute a waiver or release by the Liquidating Debtors of any such Retained Rights of Action that the Liquidating Debtors may have against such Holder.

## D.   Preservation of Retained Rights of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Debtors, and their successors, any assigns hereunder and future assigns will retain and may exclusively enforce any Retained Rights of Action and the Confirmation Order shall be deemed a *res judicata* determination of such rights to retain and exclusively enforce such Retained Rights of Action. Absent such express waiver or release, the Liquidating Debtors or their successors or assigns may pursue Retained Rights of Action, as appropriate, in accordance with the best interests of the Liquidating Debtors (or their successors or future assigns). The Retained Rights of Action may be asserted or prosecuted before or after solicitation of votes on the Plan or before or after the Effective Date.

Absent an express waiver or release set forth in the Plan, nothing in the Plan shall (or is intended to) prevent, estop or be deemed to preclude the Debtors from utilizing, pursuing, prosecuting or otherwise acting upon all or any of their Retained Rights of Action and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Rights of Action upon or after Confirmation or Consummation.

## X.

## RELEASE, WAIVER AND RELATED PROVISIONS

### A.    Injunctions

#### 1.    Generally

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions and stays provided for in the Chapter 11 Cases pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date. From and after the Effective Date, all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action or other proceeding, or otherwise asserting any claim or interest, (a) seeking to hold (i) the Liquidating Debtors or (ii) the property of the Liquidating Debtors, liable for any Claim, obligation, right, interest, debt or liability that has been discharged or released pursuant the Plan.

#### 2.    Injunction Related to Rights of Action and Terminated Claims, Administrative Expenses or Interests

Except as provided in the Plan or in the Confirmation Order, as of the Confirmation Date, all Entities that have held, currently hold or may hold a Claim,

50

Administrative Expense, Superpriority Claim, Interest or other debt or liability that is stayed, Impaired or terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions either (x) against the Debtors, the Liquidating Debtors or their property on account of all or such portion of any such Claims, Administrative Expenses, Superpriority Claims, Interests, debts or liabilities that are stayed, Impaired or terminated or (y) against any Person with respect to any Right of Action or any objection to a Claim, Administrative Expense, Superpriority Claim or Interest, which Right of Action or objection, under the Plan, is waived, released or exclusively retained by any of the Debtors: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan. To avoid any doubt, except as otherwise expressly noted in the Plan, nothing in the Plan or herein shall be construed or is intended to affect, enjoin, modify, release or waive any claims, rights, and actions that a third party may have against a person other than the Debtors or the Liquidating Debtors, provided that such claims, rights, and actions are wholly separate and exist independently from any claims, rights and actions of the Estates.

**B.**     **Exculpation**

As of and subject to the occurrence of the Effective Date, for good and valuable consideration, including the consideration provided under the Plan, each of the Debtors and their

Representatives, the Liquidating Debtors, the Plan Representative, the members of the Official

Committee (acting in such capacity), the Official Committee's Representatives, the Agent and its

Representatives upon execution of the Agent Release, the members of the Informal Committee

(acting in such capacity), the Informal Committee's Representatives, and the Holders of the

Subordinated Debt Claims and their Representatives upon execution of the Subordinated Debt

Holder Release, shall neither have nor incur any liability to any Person or Entity for any act

taken or omitted to be taken, in connection with, or related to, the formulation, preparation,

dissemination, implementation, administration, Confirmation or Consummation of the Plan or

any contract, instrument, waiver, release or other agreement or document created or entered into,

in connection with the Plan, or any other act taken or omitted to be taken in connection with the

Chapter 11 Cases; provided, however, that the foregoing provisions of this subsection shall have

no effect on the liability of any Person or Entity that results from any such act or omission that is

determined in a Final Order to have constituted gross negligence or willful misconduct.

C.    **Estate Releases of Executives, Lenders, and Holders of Subordinated Debt Claims**

**As of and subject to the occurrence of the Effective Date, for good and**

**valuable consideration, including the consideration provided under the Plan, and as part of**

**the settlement and compromise as described herein and the Disclosure Statement, each of**

**the Debtors, for themselves and the Estates, the Official Committee and its respective**

**members (acting in such capacity) hereby irrevocably, unconditionally and generally**

**releases each Executive that executes an Executive Release, the Agent upon execution of the**

**Agent Release, each Lender, the Informal Committee and its members (acting in such**

**capacity), each Holder of a Subordinated Debt Claim that executes a Subordinated Debt**

52

Holder Release, and each of the foregoing parties' Representatives (together, the "Released Parties"), from any and all actions, causes of action, Rights of Action, suits, debts, dues, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, proceedings and demands of whatsoever character, nature and kind, in law, admiralty or equity, including but not limited to claims based on statute, common law, public policy, contract (whether oral or written, express or implied) or tort law, which such Person or Entity ever had, now have or hereafter can, shall or may have against any of the Released Parties from the beginning of the world to the Effective Date that in any way relates to any of the Debtors, the Estates or the Chapter 11 Cases.

D.     Estate Release of Avoidance Claims

As of and subject to the occurrence of the Effective Date, for good and valuable consideration, including the consideration provided under the Plan, each of the Debtors, for themselves and the Estates, hereby irrevocably, unconditionally and generally release any and all Avoidance Claims against any Person or Entity, and the Debtors shall take any and all appropriate and reasonable actions to dismiss any pending Avoidance Claims with prejudice.  The foregoing release shall have no effect whatsoever on the Retained Rights of Action.

# XI.

## PENSION PLANS, OTHER RETIREE BENEFITS AND LABOR CONTRACTS

The Debtors are not obligated pursuant to section 1129(a)(13) of the Bankruptcy

Code to pay any "retiree benefits" (as that term is defined in section 1114(a) of the Bankruptcy

Code).

# XII.

## NO REGULATED RATE CHANGE WITHOUT GOVERNMENT APPROVAL

The Debtors do not charge any rates for purposes of section 1129(a)(6) that are

regulated by any governmental regulatory commission with jurisdiction under applicable non-

bankruptcy law.

# XIII.

## EXEMPTION FROM CERTAIN TRANSFER TAXES

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers by the Debtors

or the Liquidating Debtors pursuant to the Plan shall not be subject to any document recording

tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate

transfer tax, mortgage recording tax or other similar Tax or governmental assessment.

# XIV.

## RETENTION OF JURISDICTION AND MISCELLANEOUS MATTERS

### A.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the

Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and any

of the proceedings related to the Chapter 11 Cases pursuant to section 1142 of the Bankruptcy

Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(1)     establish the priority or secured or unsecured status of, allow, disallow, determine, liquidate, classify, or estimate any Claim, Administrative Expense or Interest (including, without limitation and by example only, determination of Tax issues or liabilities in accordance with Bankruptcy Code §505), resolve any objections to the allowance or priority of Claims, Administrative Expense or Interests, or resolve any dispute as to the treatment necessary to reinstate a Claim, Administrative Expense or Interest pursuant to the Plan;

(2)     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(3)     resolve any matters related to the rejection of any executory contract or unexpired lease to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims or Administrative Expenses arising therefrom;

(4)     ensure that distributions to Holders of Allowed Claims, Administrative Expenses or Interests are made pursuant to the provisions of the Plan, and to effectuate performance of the provisions of the Plan;

(5)     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending before the Effective Date or that may be commenced thereafter as provided in the Plan;

(6)     enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Confirmation Order or in the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

55

(7)     resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or the Confirmation Order;

(8)     subject to the restrictions on modifications provided in any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(9)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan or the Confirmation Order,

(10)     consider and act on the compromise and settlement of any Claim against, or Retained Right of Action of the Debtors;

(11)     decide or resolve any Retained Rights of Action under the Bankruptcy Code;

(12)     enter such orders as may be necessary or appropriate in connection with the recovery of the assets of the Debtors wherever located;

(13)     hear and determine any motions or contested matters involving Tax Claims or Taxes either arising prior (or for periods including times prior) to the Effective Date or relating to the administration of the Chapter 11 Cases, including, without limitation (i) matters involving federal, state and local Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, (ii) matters concerning Tax refunds due for any period including times prior to the Effective Date, and (iii) any matters arising prior to the Effective Date affecting Tax attributes of the Debtors;

(14)     determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

56

(15)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Chapter 11 Cases or the Plan;

(16)     remand to state court any claim, cause of action, or proceeding involving the Debtors that was removed to federal court in whole or in part in reliance upon 28 U.S.C. § 1334;

(17)     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(18)     determine any other matter not inconsistent with the Bankruptcy Code; and

(19)     enter an order or final decree concluding the Chapter 11 Cases.

## B.  **Miscellaneous Matters**

### 1.  **Headings**

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

### 2.  **Services by and Fees for Professionals and Certain Parties**

Fees and expenses for the professionals retained by the Debtors or the Official Committee for services rendered and costs incurred after the Petition Date and prior to the Effective Date will be fixed by the Bankruptcy Court after notice and a hearing and such fees and expenses will be paid by the Liquidating Debtors (less deductions for any and all amounts thereof already paid to such Persons with respect thereto) within five (5) Business Days after a Final Order of the Bankruptcy Court approving such fees and expenses. Without limiting the Liquidating Debtors' obligations after the Effective Date under applicable law, from and after the

57

Effective Date, the Liquidating Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the professional Persons thereafter incurred by the Liquidating Debtors and the members of the Supervisory Board related to: (a) the implementation or consummation of the Plan; (b) the prosecution of any objections to Claims, Administrative Expenses or Interests, or (c) litigation or other Retained Rights of Action reserved by any of the Debtors under the Plan.

### 3. Bar Date for Administrative Expenses

Requests for payment of all Administrative Expenses, other than for those for which a request and/or proof of claim has previously been Filed, must be filed and served on the Debtors and the United States Trustee no later than thirty (30) days after the Effective Date. The Debtors shall have until sixty (60) days after the Effective Date to bring an objection to a Timely Filed request for payment of an Administrative Expense. Nothing in the Plan shall prohibit the Debtors from paying Administrative Expenses in the ordinary course in accordance with applicable law during or after the Chapter 11 Cases, but after the Effective Date, the Liquidating Debtors' obligation to pay an Administrative Expense will depend upon the claimant's compliance with this section and such Administrative Expense being Allowed under the provisions of the Plan. Notwithstanding the foregoing provisions of this Section, but except as may be expressly provided in other sections of the Plan, professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered or expenses incurred after the Petition Date and prior to the Effective Date must file and serve, on all parties entitled to notice thereof, an application for final allowance of compensation and reimbursement of expenses in accordance

58

with the various orders of the Bankruptcy Court establishing procedures for submission and review of such applications; provided that, if no last date is set in such procedures for filing such applications, they must be filed no later than sixty (60) days after the Effective Date and any objections to such applications must be made in accordance with applicable rules of the Bankruptcy Court.

### 4. Notices

All notices and requests in connection with the Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

> PACHULSKI STANG ZIEHL & JONES LLP
> Attn: Richard M. Pachulski, Esq.
> Maxim B. Litvak, Esq.
> 10100 Santa Monica Blvd., Suite 1100
> Los Angeles, CA 90067
> Telephone: (310) 277-6910
> Facsimile: (310) 201-0760

All notices and requests to any Person holding of record any Claim, Administrative Expense or Interest shall be sent to such Person at the Person's last known address or to the last known address of the Person's attorney of record. Any such Person may designate in writing any other address for purposes of this Section of the Plan, which designation will be effective on receipt.

### 5. Successors and Assigns

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

DOCS_SF:59053.6

6. **Severability of Plan Provisions**

If, prior to Confirmation, any non-material term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

7. **No Waiver**

Neither the failure of the Debtors to list a Claim in the Debtors' Schedules, the failure of the Debtors to object to any Claim or Interest for purposes of voting, the failure of the Debtors to object to a Claim, Administrative Expense or Interest prior to Confirmation or the Effective Date, the failure of the Debtors to assert a Retained Right of Action prior to Confirmation or the Effective Date, the absence of a proof of Claim having been filed with respect to a Claim, nor any action or inaction of the Debtors or any other party with respect to a Claim, Administrative Expense, Interest or Retained Right of Action other than a legally effective express waiver or release shall be deemed a waiver or release of the right of the Debtors or their successors, before or after solicitation of votes on the Plan or before or after

60

Confirmation or the Effective Date to (a) object to or examine such Claim, Administrative

Expense or Interest, in whole or in part or (b) retain and either assign or exclusively assert,

pursue, prosecute, utilize, otherwise act or otherwise enforce any Rights of Action.

**8.** **Inconsistencies**

In the event the terms or provisions of the Plan are inconsistent with the terms and

provisions of the exhibits to the Plan or documents executed in connection with the Plan, the

terms of the Plan shall control.

## XV.

## CONDITIONS TO CONFIRMATION AND EFFECTIVENESS

**A.** **Conditions Precedent to Plan Effectiveness**

The Plan will not be consummated and the Effective Date will not occur unless

and until (A) the Confirmation Order is in a form acceptable to the Debtors and each of the

Support Parties; and (B) the Confirmation Order shall be a Final Order. Either of the foregoing

conditions may be waived by the Debtors (such waiver shall not require any notice, Bankruptcy

Court order, or any further action); provided, however, that the condition that the Confirmation

Order be in a form acceptable to each of the Support Parties may only be waived by each of the

Support Parties and may not be waived by the Debtors.

**B.** **Effect of Non-Occurrence of Conditions to Effective Date**

Each of the conditions to the Effective Date must be satisfied or duly waived, as

provided above, within thirty (30) days after the Confirmation Date. If each condition to the

Effective Date has not been satisfied or duly waived, as described above, within thirty (30) days

after the Confirmation Date, then upon motion by the Debtors (with the consent of each of the

Support Parties) made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court. Notwithstanding the filing of such motion, however, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated for failure to satisfy a condition to the Effective Date, the Plan shall be deemed null and void in all respects.

## XVI.

## EFFECT OF CONFIRMATION

### A.    Binding Effect of Confirmation

Confirmation will bind the Debtors, all Holders of Claims, Administrative Expenses, Superpriority Claims or Interests and other parties in interest to the provisions of the Plan whether or not the Claim, Administrative Expense, Superpriority Claim or Interest of such Holder is Impaired under the Plan and whether or not the Holder of such Claim, Administrative Expense, Superpriority Claim or Interest has accepted the Plan.

### B.    Good Faith

Confirmation of the Plan shall constitute a finding that: (i) the Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code; and (ii) all Persons' solicitations of acceptances or rejections of the Plan and the offer, issuance, sale, or purchase of a security offered or sold under the Plan have been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

**C.** **No Limitations on Effect of Confirmation**

Nothing contained in the Plan will limit the effect of Confirmation as described in section 1141 of the Bankruptcy Code.

## XVII.

## MODIFICATION OR WITHDRAWAL OF PLAN

**A.** **Modification of Plan**

The Debtors may seek to amend or modify the Plan at any time prior to its Confirmation in the manner provided by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise order, and except as otherwise set forth herein, the Debtors reserve the right to amend the terms of the Plan or waive any conditions to its Confirmation, effectiveness or consummation if the Debtors determine (with the consent of each of the Support Parties) that such amendments or waivers are necessary or desirable to confirm, effectuate or consummate the Plan; provided, however, that any such amendments or modifications are subject to approval by each of the Support Parties.

After Confirmation of the Plan, but prior to the Effective Date, the Debtors may, with the consent of each of the Support Parties, apply to the Bankruptcy Court, pursuant to section 1127 of the Bankruptcy Code, to modify the Plan. After the Effective Date, the Liquidating Debtors may, with the consent of the Supervisory Board, apply to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

DOCS_SF:59053.6

**B.**     <u>Withdrawal of Plan</u>

        The Debtors reserve the right, upon the consent of each of the Support Parties, to revoke and withdraw the Plan at any time prior to the Effective Date, in which case the Plan will be deemed to be null and void.

**XVIII.**

**<u>CONFIRMATION REQUEST</u>**

        The Debtors request that the Bankruptcy Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection of the Plan by any Impaired Class.

<br>

                            /s/ F. Duffield Meyercord
                            F. DUFFIELD MEYERCORD
                            Director and Sole Officer of Debtors and Debtors in
                            Possession

<br>

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
Richard M. Pachulski (CA Bar No. 90073)
Brad R. Godshall (CA Bar No. 105438)
Maxim B. Litvak (CA Bar No. 215852)
Rachel Lowy Werkheiser (Bar No. 3753)
919 North Market Street, Seventeenth Floor
Post Office Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

<br>

Counsel to Debtors and Debtors in Possession