IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| NELLSON NUTRACEUTICAL, INC.,[1] | ) | Case No. 06-10072 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | **Re: Docket No. 2170** |

## MEMORANDUM IN SUPPORT OF CONFIRMATION OF CHAPTER 11 PLAN OF LIQUIDATION FOR NELLSON NUTRACEUTICAL, INC., ET AL.

Dated: September 8, 2008

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
Maxim B. Litvak (CA Bar No. 215852)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, Seventeenth Floor
Post Office Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel to Debtors and Debtors in Possession

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) Nellson Nutraceutical, Inc., a Delaware corporation, Fed. Tax Id. #5044; (b) Nellson Holdings, Inc., a Delaware corporation, Fed. Tax Id. #0642; (c) Nellson Intermediate Holdings, Inc., a Delaware corporation, Fed. Tax Id. #0653; (d) Nellson Northern Operating, Inc., a Delaware corporation, Fed. Tax Id. #7694, (e) Nellson Nutraceutical Eastern Division, Inc., a Delaware corporation, Fed. Tax Id. #8503; (f) Nellson Nutraceutical Powder Division, Inc., a Delaware corporation, Fed. Tax Id. #3670; and (g) Vitex Foods, Inc., a California corporation, Fed. Tax Id. #9218.

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 1

II. NO OBJECTIONS TO CONFIRMATION ............................................................ 1

III. THE PLAN MEETS ALL APPLICABLE REQUIREMENTS FOR
CONFIRMATION UNDER SECTION 1129(b) ............................................................ 2

A. A Plan Proponent Must Show Compliance with Provisions of the Bankruptcy
Code by the Preponderance of the Evidence. .............................................................. 2
B. The Plan Satisfies Section 1129(a)(1) ...................................................................... 2
   1. The Plan Properly Designates Classes of Claims and Interests (Sections
1123(a)(1) and 1122). .................................................................................................... 3
   2. Specification of Unimpaired Classes (Section 1123(a)(2)). ................................ 4
   3. Treatment of Impaired Classes (Section 1123(a)(3)). ......................................... 4
   4. Equal Treatment Within Classes (Section 1123(a)(4)). ...................................... 4
   5. Means for Implementation (Section 1123 (a)(5)). ............................................... 4
   6. Charter Provisions (Section 1123(a)(6)). ............................................................ 5
   7. Officers and Directors (Section 1123(a)(7) and 1129(a)(5)). ............................. 5
C. The Proponents of the Plan have Satisfied Section 1129(a)(2). ............................. 6
D. The Plan was Proposed in Good Faith (Section 1129(a)(3)). ................................. 7
E. Payments for Services and Expenses (Section 1129(a)(4)). ................................... 9
F. Plan Representative (Section 1129(a)(5)). .............................................................. 9
G. Rate Changes (Section 1129(a)(6)) ......................................................................... 9
H. The Plan Satisfies the "Best Interests" Test (Section 1129(a)(7)). ........................ 9
I. Acceptance by All Impaired Classes (Section 1129(a)(8)) .................................... 10
J. Treatment of Priority Claims (Section 1129(a)(9)). .............................................. 10
K. Acceptance of at Least One Impaired Class (Section 1129(a)(10)). ..................... 11
L. Feasibility (Section 1129(a)(11)). ......................................................................... 11
M. Payment of Certain Fees (Section 1129(a)(12)). ................................................. 11
N. Continuation of Retiree Benefits (Section 1129(a)(13)). ..................................... 12
O. Provisions Relating to Individual Debtors (Sections 1129(a)(14)-(16)) .............. 12
IV. THE PLAN SHOULD BE CONFIRMED PURSUANT TO SECTION 1129(b) OF
THE BANKRUPTCY CODE ...................................................................................... 12

A. The Plan Does Not Discriminate Unfairly with Respect to the Deemed Rejecting
Classes ........................................................................................................................ 13
B. The Plan is "Fair and Equitable" with Respect to the Rejecting Class ................ 14
V. THE SETTLEMENTS INCORPORATED IN THE PLAN SHOULD BE
APPROVED ................................................................................................................. 15

VI. THE PLAN PROVISIONS ESTABLISHING LIMITATION OF LIABILITY AND
RELEASES ARE CONSISTENT WITH APPLICABLE PRECEDENT AND SHOULD
BE APPROVED .......................................................................................................... 20

VII. CONCLUSION ................................................................................................... 21

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), submit this memorandum in support of confirmation of the *Chapter 11 Plan of Liquidation for Nellson Nutraceutical, Inc., et al.* (the "Plan").[1]

## I.
## INTRODUCTION

This memorandum, together with the evidence to be adduced at the Confirmation Hearing,[2] will establish that the Plan meets the requirements for confirmation pursuant to section 1129 of the United States Bankruptcy Code, 11 U.S.C. §§101-1330 (as amended, the "Bankruptcy Code"). As set forth below, the Plan has been *unanimously* accepted by three impaired voting classes (two of which consist of non-insiders): Class 3 (First Lien Lender Claims), Class 4 (Second Lien Lender Claims), and Class 6 (Subordinated Debt Claims). The Plan also satisfies each of the substantive requirements of 11 U.S.C. § 1129(a), other than subsection (a)(8), which requires acceptance by each impaired class.[3] Because the Plan is deemed rejected by two impaired classes -- Class 5 (General Unsecured Claims) and Class 7 (Interests in the Debtors), the Debtors seek to confirm the Plan under 11 U.S.C. § 1129(b).

## II.
## NO OBJECTIONS TO CONFIRMATION

The Debtors have received no objections to confirmation of the Plan to date. The Debtors have given the Office of the United States Trustee (the "UST") additional time to

---

[1] The facts set forth in this memorandum are the facts that the Debtors intend to establish at the Confirmation Hearing through proffer, testimony or affidavit, including the *Declaration and Statement of F. Duffield Meyercord in Support of the Chapter 11 Plan of Liquidation for Nellson Nutraceutical, Inc., et al.*, filed concurrently herewith, or have previously adduced at prior hearings. The Debtors respectfully request that the Court take judicial notice of all such prior evidence introduced in these cases.

[2] Unless other defined, capitalized terms used herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as the case may be.

[3] Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, are deemed to accept the Plan.

comment on the Plan, but will endeavor to resolve any issues raised by the UST prior to the

Confirmation Hearing.

### III.
### THE PLAN MEETS ALL APPLICABLE REQUIREMENTS
### FOR CONFIRMATION UNDER SECTION 1129(b)

The Court may confirm a chapter 11 plan if the requirements of subsections

1129(a)(1)-(a)(7) and (a)(9)-(a)(13) and section 1129(b) of the Bankruptcy Code are satisfied.

The Debtors believe the Plan complies with the requirements of the Bankruptcy Code.[4]

### A.     A Plan Proponent Must Show Compliance
### with Provisions of the Bankruptcy Code by
### the Preponderance of the Evidence.

As the Plan proponents, the Debtors bear the burden of proof on all elements

necessary for confirmation. See In re Richard Buick, Inc., 126 B.R. 840, 851 (Bankr. E.D. Pa.

1991). The Debtors will show by a preponderance of the evidence that the Plan complies with

the applicable provisions of the Bankruptcy Code and should be confirmed. See In re Union

Meeting Partners, 165 B.R. 553, 574 n. 17 (Bankr. E.D. Pa. 1994) (adopting preponderance

standard with respect to section 1129 requirements).

### B.     The Plan Satisfies Section 1129(a)(1).

Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the

"applicable provisions" of the Bankruptcy Code. In determining whether the Plan satisfies

section 1129(a)(1) of the Bankruptcy Code, the Court must consider section 1123(a) of the

Bankruptcy Code, which sets forth certain items that a plan must contain; section 1122 of the

---

[4] Because Class 5 (General Unsecured Claims) and Class 7 (Interests in the Debtors) are deemed to reject the Plan, the Debtors have not satisfied section 1129(a)(8). Nevertheless, for the reasons set forth in Section IV below, the Plan should be confirmed because the Debtors have satisfied the requirements of section 1129(b) as to Classes 5 and 7.

Bankruptcy Code, which governs classification of claims; and section 510 of the Bankruptcy Code, which governs subordination of claims. See Federal Home Loan Mortgage Corp. v. Bugg (In re Bugg), 172 B.R. 781, 783 (E.D. Pa. 1994).

### 1. The Plan Properly Designates Classes of Claims and Interests (Sections 1123(a)(1) and 1122).

Section 1123(a)(1) of the Bankruptcy Code requires that a plan classify all claims (with the exception of certain administrative and priority claims) and all interests, and that such classification comply with section 1122 of the Bankruptcy Code. Here, Article IV of the Plan designates seven classes of Claims and Interests. See Plan, Art. IV. Consistent with section 1123(a)(1) of the Bankruptcy Code, the Plan also provides for unclassified Administrative Expenses, Superpriority Claims and Priority Tax Claims. See Plan, Art. III.

Additionally, the Plan's classification scheme complies with section 1122 of the Bankruptcy Code. The Plan properly classifies secured Claims (Classes 2, 3 and 4) separately from unsecured claims (Classes 5 and 6). The Plan properly classifies unsecured claims by first subdividing such Claims into priority non-tax claims (Class 1) and non-priority Claims (Classes 5 and 6). Finally, the Plan properly classifies equity interests (Class 7).

A plan proponent has significant flexibility in classifying claims and interests under section 1122 of the Bankruptcy Code as long as a reasonable legal or factual basis exists for the classification and all claims or interests within a particular class are substantially similar. See John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs., 987 F.2d 154 (3d Cir. 1993); In re Jersey City Medical Center, 817 F.2d 1055, 1060-61 (3d Cir. 1987) ("Congress intended to afford bankruptcy judges broad discretion [under section 1122] to decide the

propriety of plans in light of the facts of each case"). The Plan's classification scheme is proper and satisfies section 1122 of the Bankruptcy Code because, as described above, such scheme recognizes the differing legal and equitable rights of the holders of Claims and Interests.

### 2. Specification of Unimpaired Classes (Section 1123(a)(2)).

Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan." The Plan meets this requirement by identifying each unimpaired class: Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims). See Plan, Art. V(A).

### 3. Treatment of Impaired Classes (Section 1123(a)(3)).

Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any classes of claims or interests that is impaired under the plan." The Plan meets this requirement by setting forth the treatment of each impaired Class. See Plan, Art. IV(B).

### 4. Equal Treatment Within Classes (Section 1123(a)(4)).

Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." The Plan provides that Holders of Allowed Claims will receive the same percentage recoveries from the Debtors as other Allowed Claims within their respective classes. See Plan, Art. IV. Therefore, the Plan meets this requirement.

### 5. Means for Implementation (Section 1123 (a)(5)).

Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation. The Plan satisfies this requirement by setting forth in

Article VI the primary provisions necessary to implement the Plan. The Plan also contains: (i) provisions governing distributions, see Plan, Art. VIII; (ii) procedures for resolving disputed claims and interests, see Plan, Art. VIII(D); (iii) provisions specifying the treatment of executory contracts, see Plan, Art. VII; and (iv) provisions specifying the powers, rights, and duties of the Liquidating Debtors, Plan Representative and Supervisory Board, see Plan, Art. VI(C) and (D). Together, these provisions provide "adequate means" for implementation of the Plan.

### 6.      Charter Provisions (Section 1123(a)(6)).

Section 1123(a)(6) of the Bankruptcy Code requires the inclusion of provisions in charters of the entities described therein that: (a) prohibits the issuance of nonvoting equity securities and (b) provide for an "appropriate distribution" of voting power among those securities possessing voting power. This provision is contained in Art. VI(K) of the Plan.

### 7.      Officers and Directors (Section 1123(a)(7) and 1129(a)(5)).

Section 1123(a)(7) of the Bankruptcy Code requires that the Plan's provisions with respect to the manner of selection of any director, officer, or trustee, or any successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy . . . ." In addition, section 1129(a)(5) of the Bankruptcy Code requires that the Debtors disclose the identity of certain individuals who will hold positions with the Reorganized Debtors after confirmation of the Plan.[5] Under section 1129(a)(5)(A)(i) of the Bankruptcy Code, the proponent of a plan must disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer or voting trustee of the debtor, . . . or a

---

[5]  Because related requirements are set forth in section 1129(a)(5), the Debtors address both sections 1123(a)(7) and 1129(a)(5) of the Bankruptcy Code in this section of the memorandum.

successor to the debtor under the plan." Section 1129(a)(5)(A)(ii) of the Bankruptcy Code

further requires that the service of such individuals be "consistent with the interests of creditors

and equity security holders with public policy." Section 1129(a)(5)(B) of the Bankruptcy Code

requires that the plan proponent disclose the "identity of any insider that will be employed or

retained by the reorganized debtor, and the nature of any compensation for such insider."

The Debtors have complied with sections 1129(a)(5) and 1123(a)(7) of the

Bankruptcy Code. As set forth in a notice filed with the Court on August 29, 2008, the Debtors

have identified the initial Plan Representative and the members of the Supervisory Board. The

Plan provides for the rights and duties of the Liquidating Debtors, Plan Representative and

Supervisory Board. The Plan Representative shall serve from entry of the Order confirming the

Plan and shall be authorized, among other powers, to take whatever acts and actions are

necessary or advisable to make Distributions provided for in the Plan. See Plan, Art. VI(D). No

insiders will serve in any capacity with the Debtors following the Effective Date.

These disclosures and the Plan provisions concerning the selection and

replacement, if necessary, of the Plan Representative and Supervisory Board are consistent with

the interests of creditors and with public policy and satisfy sections 1123(a)(7) and 1129(a)(5) of

the Bankruptcy Code.

C.     **The Proponents of the Plan**
       **have Satisfied Section 1129(a)(2).**

Section 1129(a)(2) of the Bankruptcy Code requires that a plan proponent comply

with the applicable provisions of the Bankruptcy Code. The principal purpose of section

1129(a)(2) is to ensure that a plan proponent has complied with section 1125 of the Bankruptcy

Code in soliciting acceptance of the plan.  See In re Resorts Int'l, Inc., 145 B.R. 412, 468-69

(Bankr. D.N.J. 1990); see also H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 412 (1977), reprinted

in 1978 U.S.C.C.A.N. 5963, 6368.

On or before August 10, 2008, the Debtors distributed Solicitation Packages to all

holders of First Lien Lender Claims (Class 3), Second Lien Lender Claims (Class 4), and

Subordinated Debt Claims (Class 6).[6]  The Disclosure Statement provides extensive information

regarding, among other things:  (i) the Plan; (ii) events preceding the commencement of these

chapter 11 Cases; (iii) claims asserted against the Debtors' estates; (iv) risk factors affecting the

Plan; (v) a liquidation analysis setting forth the estimated return that creditors would receive in

Chapter 7; (vi) financial information and valuations that would be relevant to creditors'

determinations of whether to accept or reject the Plan; and (vii) federal tax law consequences of

the Plan.

**D.      The Plan was Proposed in
        Good Faith (Section 1129(a)(3)).**

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in

good faith and not by any means forbidden by law."  Although not defined in the Bankruptcy

Code, "good faith" has been described by the courts to include:  (i) the debtor's "'legitimate hope

of success,'" In re Century Glove, Inc., Civ. A. 90-400-SLR, 1993 WL 239489, at *4 (D. Del.

Feb. 10, 1993) (quoting In re Sun Country Development, Inc., 764 F.2d 406, 408 (5th Cir.

1985)); see also In re Shoen, 193 B.R. 302, 318 (Bankr. D. Ariz. 1996) (citations omitted); (ii) a

showing that the plan was proposed with "honesty and good intentions," see Kane v. Johns-

---

[6]  The Solicitation Packages were mailed on August 8, 2008.  See Docket No. 2224.

Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988) (citations omitted); (iii) the existence of "'a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code,'" In re Madison Hotel Assocs., 749 F.2d 410, 425 (7th Cir. 1984) (citations omitted); see Traders State Bank v. Mann Farms, Inc. (In re Mann Farms, Inc.), 917 F.2d 1210, 1214 (9th Cir. 1990) (citations omitted); Ryan v. Loui (In re Corey), 892 F.2d 829, 835 (9th Cir. 1989); and (iv) whether the debtor's bankruptcy filing was designed to abuse the judicial process and the purpose of the reorganization provisions of the Bankruptcy Code. See Natural Land Corp. v. Baker Farms, Inc., 825 F.2d 296, 298 (11th Cir. 1987); In re VIP Motor Lodge, Inc., 133 B.R. 41, 44 (Bankr. D. Del. 1991) (finding of good faith where debtor did not seek to use the bankruptcy process for dilatory purposes).

The Debtors are liquidating their estates and maximizing return for their creditors. Following the Effective Date, the Liquidating Debtors, through the Plan Representative and Supervisory Board, will make distributions to creditors consistent with the Plan. Thus, the Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

Moreover, no person has filed a valid objection to confirmation of the Plan on the grounds that the Plan was not proposed in good faith or by any means forbidden by law. Accordingly, pursuant to Bankruptcy Rule 3020(b)(2), the Court may determine compliance with section 1129(a)(3) of the Bankruptcy Code without receiving evidence on such issues.

## E. Payments for Services and Expenses (Section 1129(a)(4)).

The Debtors will not make any payments "for services or for costs and expenses in or in connection with the case . . . , or in connection with the plan and incident to the case," unless such payments either have been approved by the Court as reasonable or are subject to approval of the Court as reasonable, thus satisfying section 1129(a)(4) of the Bankruptcy Code. The Plan's procedures set forth in Article IV and XIV(B) of the Plan providing for judicial review and approval of fees, costs and expenses to be paid by the Debtors satisfy the requirements of section 1129(a)(4) of the Bankruptcy Code. See In re Resorts Int'l, Inc., 145 B.R. at 475 (section 1129(a)(4) of the Bankruptcy Code is satisfied if fees, costs and expenses are subject to final court approval).

## F. Plan Representative (Section 1129(a)(5)).

The Debtors have addressed the manner in which they have complied with section 1129(a)(5) of the Bankruptcy Code above.

## G. Rate Changes (Section 1129(a)(6)).

Section 1129(a)(6) of the Bankruptcy Code relating to regulated rate changes is inapplicable to the Debtors.

## H. The Plan Satisfies the "Best Interests" Test (Section 1129(a)(7)).

The "best interests" test of section 1129(a)(7) of the Bankruptcy Code requires that holders of impaired claims or interests who do not vote to accept the plan "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor

were liquidated under Chapter 7 of [title 11] on such date." 11 U.S.C. § 1129(a)(7)(A)(ii). If the Court finds that each non-consenting member of an impaired claim would receive at least as much under the Plan as it would receive in a Chapter 7 liquidation, the Plan satisfies the best interests test. See In re Century Glove, Inc., supra at *7.

As set forth in Art. XIX of the Disclosure Statement, members of all impaired classes will receive at least as much under the Plan as they would in a chapter 7 liquidation. Accordingly, the Plan satisfies the "best interests" test because no impaired, non-consenting class members will receive less under the Plan than they would in a Chapter 7 liquidation.

## I.     Acceptance by All Impaired Classes (Section 1129(a)(8)).

Three impaired classes entitled to vote on the Plan -- Class 3 (First Lien Lender Claims), Class 4 (Second Lien Lender Claims), and Class 6 (Subordinated Debt Claims) -- have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. However, Class 5 (General Unsecured Claims) and Class 7 (Interests), which are impaired, are deemed to reject the Plan. See 11 U.S.C. § 1126(g). Accordingly, section 1129(a)(8) of the Bankruptcy Code has not been satisfied, and the Debtors, therefore, request confirmation of the Plan under section 1129(b) of the Bankruptcy Code. See Part IV below.

## J.     Treatment of Priority Claims (Section 1129(a)(9)).

Section 1129(a)(9) of the Bankruptcy Code contains a number of requirements concerning the payment of priority claims. The Plan's payment provisions meet these requirements. See Plan, Art. III and IV(B)(1).

**K.    Acceptance of at Least One
        Impaired Class (Section 1129(a)(10)).**

If a plan has one or more impaired classes of claims, section 1129(a)(10) of the

Bankruptcy Code requires that at least one such class vote to accept the plan, determined without

including any acceptance of the plan by any insider. Class 3 (First Lien Lender Claims) and

Class 4 (Second Lien Lender Claims) are two impaired classes that have voted to accept the Plan

and no votes cast by any "insiders" have been included, thus satisfying section 1129(a)(10) of the

Bankruptcy Code.

**L.    Feasibility (Section 1129(a)(11)).**

Section 1129(a)(11) of the Bankruptcy Code provides that a plan may be

confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or

the need for further financial reorganization, of the debtor or any successor to the debtor under

the plan, unless such liquidation or reorganization is proposed in the plan." The Debtors have

cash on hand to satisfy all obligations under the Plan. Accordingly, the Plan is feasible and

satisfies section 1129(a)(11) of the Bankruptcy Code.

**M.    Payment of Certain Fees (Section 1129(a)(12)).**

All fees payable under 28 U.S.C. §1930 have been paid or will be paid on or

before the Effective Date pursuant to Article XIV(B) of the Plan. The Debtors thus comply with

section 1129(a)(12).

**N. Continuation of Retiree Benefits (Section 1129(a)(13)).**

Section 1129(a)(13) of the Bankruptcy Code requires the continuation of retiree benefits for the duration of the period that the debtor has obligated itself to provide such benefits. Section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Debtors.

**O. Provisions Relating to Individual Debtors (Sections 1129(a)(14)-(16)).**

The Debtors are not required by a judicial or administrative order, or by statute, to pay domestic support obligations within the meaning of section 1129(d)(14) of the Bankruptcy Code. The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to these cases. Finally, the Debtors are moneyed, businesses or commercial corporations, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these cases.

## IV.
## THE PLAN SHOULD BE CONFIRMED PURSUANT
## TO SECTION 1129(b) OF THE BANKRUPTCY CODE.

Because Class 5 (General Unsecured Claims) and Class 7 (Interests) are deemed to reject the Plan, the requirements of subsection 1129(a)(8) of the Bankruptcy Code are not satisfied, and the Debtors thus request confirmation of the Plan under section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code, the so-called "cramdown" provisions, provides that if all of the applicable confirmation requirements of section 1129(a) of the Bankruptcy Code other than subsection (8) (requiring all impaired classes to accept the plan) are met, the court, on request of the plan proponent, shall confirm the plan if it does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or interests that is impaired under, and that has not accepted, the plan. 11 U.S.C. § 1129(b)(1).

## A. The Plan Does Not Discriminate Unfairly with Respect to the Deemed Rejecting Classes.

The "unfair discrimination" standard of section 1129(b) of the Bankruptcy Code does not prohibit all types of discrimination among holders of Claims and Interests; it merely prohibits unfair discrimination. In re The Leslie Fay Cos., Inc., 207 B.R. 764, 791 n. 37 (Bankr. S.D.N.Y. 1997). It requires that a dissenting class receive "treatment which allocates value to the [dissenting] class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor," In re Mcorp Fin., Inc., 137 B.R. 219, 234 (Bankr. S.D. Tex. 1192), dismissed on other grounds, 139 B.R. 820 (S.D. Tex. 1992), so that "a dissenting class will receive relative value equal to the value given to all other similarly situated classes." In re Johns-Manville Corp., 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1987), aff'd sub nom., Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988); see also CoreStates Bank, N.A. v. United Chemical Techs. 202 B.R. 33, 47 (E.D. Pa. 1996).

The Bankruptcy Code does not define "unfair discrimination," leaving it to the courts to develop their own definitions and criteria. In re Environdyne Indus., No. 93 B 310, 1993 WL 566565, at *36 (Bankr. N.D. Ill. 1993). According to the Leslie Fay court, "[t]he section 1129(b)(1) test boils down to whether the proposed discrimination between classes has a reasonable basis and is necessary for the reorganization." 207 B.R. at 791 n. 37.

Class 5 under the Plan consists of General Unsecured Claims. The Plan does not discriminate unfairly as to Class 5 because there are insufficient assets in the estate to pay senior, secured claims. However, the Plan does contain a general release of Avoidance Claims, which will have the effect of benefitting many general unsecured creditors.

The Plan also does not discriminate unfairly against Class 7 (Interests) because holders are Interests which are subordinate to all other Classes under the Plan. Class 7 is not legally "entitled" to receive any distribution given that the Debtors are clearly insolvent.

**B.     The Plan is "Fair and Equitable"**
**with Respect to the Rejecting Class.**

The Plan is "fair and equitable" as to Classes 5 and 7 pursuant to section 1129(b) of the Bankruptcy Code. The requirements of the "fair and equitable" test with respect to unsecured creditors and equity holders are set forth in sections 1129(b)(2)(B) and 1129(b)(2)(C). Each section specifies two alternative requirements, only one of which must be satisfied in order for a plan to be fair and equitable with respect to a dissenting class of unsecured creditors or equity interests. See 11 U.S.C. § 1129(b)(2)(B)(i), (ii) and 1129(b)(2)(C)(i), (ii); see also In re P.J. Keating Co., 168 B.R. 464, 468 (Bankr. D. Mass. 1994) ("test under section 1129(b)(2)(C) is an alternative one").

The Plan is fair and equitable as to Class 5 because, as required by section 1129(b) with respect to a class of unsecured claims, the Plan provides that the holder of any claim or interest that is junior to the claims of such class will not receive or retain any property under the Plan on account of any such junior claim. (It bears mention that the holders of Subordinated Debt Claims, which benefit from certain releases under the Plan, are not "junior" to the interests of other General Unsecured Claims because such Subordinated Debt Claims are direct claims against Nellson Holdings and are not subordinated to other unsecured claims).

Similarly, with respect to Class 7, the Plan satisfies the second paragraph of section 1129(b)(2)(C) of the Bankruptcy Code. That section permits the "cramdown" of non-assenting classes of equity interests as long as:

> the holders of any interests that is junior to the interests of such [dissenting] class [does] not receive or retain under the plan on account of such junior interest any property.

11 U.S.C. §1129(b)(2)(C) (ii). The Plan satisfies this requirement because no Class junior to Class 7 will receive or retain any property under the Plan.

Thus, the Debtors satisfy the "cramdown" requirements of section 1129(b) of the Bankruptcy Code, and the Plan may be confirmed notwithstanding the Debtors' inability to comply with section 1129(a)(8) of the Bankruptcy Code.

## V.
## THE SETTLEMENTS INCORPORATED IN
## THE PLAN SHOULD BE APPROVED

As set forth in the Plan and the Disclosure Statement, the Plan effectuates a global settlement and release of claims amongst the Debtors and their various creditor constituents, equity holders and officers and directors (the "Settlement"). The Settlement lays the framework for the distributions and releases set forth in the Plan, and is the result of arms length, good faith negotiations between the Debtors, the Agent, the Informal Committee, the Official Committee, and Fremont. The Debtors urge the Court to approve the settlement pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019.

In reviewing a proposed settlement, the Court must determine that (1) it is "fair and equitable," Protective Comm. for Ind. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163 (1968), and (2) in the best interests of the estate, In re

15

Best Prods. Co., 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994). Bankruptcy Rule 9019(a) commits the approval or rejection of a settlement to the sound discretion of the bankruptcy court. In re Michael, 183 B.R. 230, 232 (Bankr. D. Mont. 1995).

The Third Circuit specifically sets forth four criteria to be considered by the court in determining the fairness, reasonableness, and adequacy of a settlement, as follows:

(a)     the probability of success in litigation;

(b)     the likely difficulties in collection;

(c)     the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(d)     the paramount interest of creditors.

In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); see also In re RFE Industries, Inc., 283 F.3d 159, 165 (3rd Cir. 2002).

From the perspective of the Estates, the instant Settlement contemplates only three things:  (1) a release of any rights or claims against the Agent and the Lenders; and (2) a release of any rights or claims against the Holders of the Subordinated Debt Claims (i.e., Fremont) and Executives, provided that such parties execute certain releases; and (3) a release of Avoidance Actions and Intercompany Claims (together, the "Estate Releases").  The Settlement also provides for a substantive consolidation of the Debtors' estates, but solely for purposes of voting and distributions under the Plan.

As detailed in Art. VI of the Disclosure Statement, the Estate Releases are justified because (a) they will facilitate the Debtors' reorganization as an essential part of a compromise and settlement that resolves multiple issues and disputes, (b) they are supported by

the creditors who stand to benefit from any claims that are being released, and (c) perhaps most fundamentally, the Debtors are unaware of any meritorious Estate claims that they are giving up against the Agent, the Lenders, the Holders of the Subordinated Debt Claims, and/or the Executives.

The Debtors do not believe that the Estates have any viable claims against the Agent, any of the Lenders, Fremont or any Holder of a Subordinated Debt Claim, or any of the Executives. (Notably, the Estate Releases in favor of the Holders of the Subordinated Debt Claims and Executives would only become effective upon execution of certain releases by such parties in favor of the Estates.) The only possible prepetition claims that have been articulated against the Lenders, Fremont or any Executive relate to the possibility that a dividend recapitalization transaction involving Fremont in 2004 may have been a fraudulent transfer. The Debtors, however, investigated this claim and concluded that there was no merit to it because, among other reasons, the Debtors were not insolvent at the time of the transaction. The statute of limitations on any fraudulent transfer claims has since expired.

The Debtors have also considered whether the Estates have any postpetition claims against Fremont based on the Bankruptcy Court's Valuation Order and the statements about Fremont contained therein, which included a statement that Fremont manipulated the Debtors' valuation efforts during the bankruptcy case. The Debtors do not believe that there are any viable postpetition claims to pursue against Fremont.

Notwithstanding the Debtors' belief that the Estates have no valuable claims to release against the Agent, the Lenders, the Holders of the Subordinated Debt Claims or any Executive, the Estate releases in the Plan are supported by material consideration. The Agent

17

and the Lenders are allowing their cash collateral to be used for the purpose of funding the

Estates' administrative expenses and priority claims, and the reorganization efforts encompassed

in the Plan. At the same time, the Holders of the Subordinated Debt Claims -- namely, Fremont -

- are agreeing to release in excess of $40 million in unsecured debt owed by Nellson Holdings,

an entity which has no significant debt other than to Fremont and which might have valuable

assets. Fremont is also allowing Nellson Holdings to waive intercompany claims against the

other Debtors that could total millions of dollars (some of which may be entitled to

administrative status). Finally, the Executives under the Plan will be forfeiting their contingent,

unliquidated prepetition and administrative claims against the Debtors for indemnity and

contribution.

Taken together, the Debtors believe that the Estate Releases in favor of the Agent,

the Lenders, the Holders of Subordinated Debt Claims and Executives are warranted by virtue of

the lack of any known viable claims to assert, the substantial consideration offered in return for

such releases, and the overarching benefits to the Estates associated with confirmation of the

Plan.

The Debtors also believe that the contemplated Estate Release of any Avoidance

Claims under the Plan is in the best interests of the Estates. In order to preserve the Estates'

rights as to certain viable Avoidance Claims, the Debtors have filed various lawsuits seeking to

recover preferential transfers. (These claims are specifically identified in Exhibit 3 to the

Disclosure Statement). The Debtors estimate that such pending Avoidance Claims could have

significant value. The primary beneficiaries of these Avoidance Claims are the Lenders on

account of their Allowed Superpriority Claims. Many of the targets of the pending Avoidance

Claims are Holders of General Unsecured Claims. The Agent, on behalf of the Lenders, the Informal Committee, and the Official Committee have agreed as part of the Settlement to release the pending Avoidance Claims asserted by the Estates. Given that the Lenders have the foremost economic interest in the pending Avoidance Claims and the release of such claims benefits unsecured creditors and is necessary to effectuate the Settlement and the Plan, the Debtors support the contemplated release of all remaining Avoidance Claims and believe that such release is in the best interests of the Estates.

The proposed Settlement and the Estate Releases are also justified under the remaining factors relevant to approval of a compromise in bankruptcy. If approved, the Settlement will finally resolve contentious, costly, and long-standing litigation between the Debtors, the Agent, the Lenders, the Informal Committee, the Official Committee, and Fremont. Further, the pending claims of the Debtors' various current and former Executives can be addressed in a consensual manner.

In sum, the Debtors submit that the Settlement allows the parties with the most at stake to maximize value and represents a positive resolution of these Chapter 11 Cases that is supported by the paramount interests of creditors. Accordingly, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors urge the Court to approve the Settlement incorporated in the Plan.

## VI.
## THE PLAN PROVISIONS ESTABLISHING LIMITATION
## OF LIABILITY AND RELEASES ARE CONSISTENT
## WITH APPLICABLE PRECEDENT AND SHOULD BE APPROVED

The Plan contains certain releases and exculpatory provisions. See Plan, Art. X. Each of these provisions is consistent with applicable precedent and should be approved.

First, as noted above, the Estate Releases are part of a global Settlement that is supported by adequate consideration and in the paramount interests of creditors.

Second, the Plan contains customary provisions exculpating certain parties instrumental to the Plan. In PWS Holding Corp., 228 F.3d 224, 235 (3d Cir. 2000), the Third Circuit approved a plan provision that released claims "brought in connection with work on the bankruptcy reorganization plan . . . ." The plan provision at issue in PWS did not "eliminate liability but rather limit[ed] it to willful misconduct or gross negligence." Id. The Third Circuit characterized such provision as a "commonplace provision in Chapter 11 plans." Id. The Plan contains similar provisions. See Plan, Art. X(B). These provisions are all consistent with the holding in PWS and are customarily approved in this jurisdiction. Accordingly, the Plan provisions that establish a willful misconduct/gross negligence liability standard are consistent with applicable law should be approved.

## VII.
## CONCLUSION

For the foregoing reasons and those to be presented at the Confirmation Hearing,

the Court should: (a) overrule any objections to confirmation not previously withdrawn or

settled; (b) confirm the Plan; and (c) grant the Debtors such other and further relief as is just and

proper.

Dated: September 8, 2007

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
Maxim B. Litvak (CA Bar No. 215852)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, Seventeenth Floor
Post Office Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel to Debtors and Debtors in Possession