IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE | : | |
| | : | |
| NELLSON NUTRACEUTICAL, INC., | : | Bankruptcy No. 06-10072 (CSS) |
| *et al.*, | : | |
|     Debtors. | : | |
| | : | |
| UNITED STATES TRUSTEE AND | : | |
| OFFICIAL COMMITTEE OF | : | |
| UNSECURED CREDITORS | : | |
| | : | |
|     Appellants, | : | |
| | : | |
|     v. | : | |
| | : | |
| NELLSON NUTRACEUTICAL, INC., | : | Civil Action No. 06-520-GMS |
| *et al.*, | : | |
|     Appellees. | : | |

**MEMORANDUM**

**I.    INTRODUCTION**

Presently pending before the court is Nellson Nutraceutical, Inc., *et al.*'s (collectively, the "Debtors")[1] motion to dismiss on mootness grounds the appeal filed by the United States Trustee (the "Trustee") and the Official Committee of Unsecured Creditors (the "Committee")[2] from the July 13, 2006 order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). For the following reasons, the court will deny the Debtors' motion to dismiss this appeal.

**II.    BACKGROUND**

On January 28, 2006, the Debtors filed voluntary petitions for relief under chapter 11 of the

---

[1] The "Debtors" in this appeal are Nellson Nutraceutical, Inc., Nellson Holdings, Inc., Nellson Intermediate Holdings, Inc., Nellson Northern Operating, Inc., Nellson Nutraceutical Eastern Division, Inc., Nellson Nutraceutical Powder Division, Inc., and Vitex Foods, Inc.

[2] The Trustee and the Committee are referred to hereinafter, collectively, as the "Appellants."

Bankruptcy Code. On April 28, 2006, the Debtors filed a Motion for Entry of an Order Authorizing and Approving Payments Under Management Incentive Plan (the "MIP motion") in the chapter 11 proceeding. In that motion, the Debtors were seeking authority to implement and make payments under a "performance-based management incentive plan" (the "MIP"). According to the Debtors, bonus payments under the MIP were tied to the Debtors achieving certain objective earnings targets. The Appellants objected to the MIP motion. Among other reasons, the Appellants alleged that the MIP motion was actually a veiled attempt by the Debtors to obtain approval of a management retention plan and to contravene section 503(c) of the Bankruptcy Code.[3] The Appellants also

---

[3] In relevant part, section 503(c) of the Bankruptcy Code provides that:
there shall neither be allowed, nor paid –
    (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that –
    (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
    (B) the services provided by the person are essential to the survival of the business; and
    (C) either –
      (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
      (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;
  (2) a severance payment to an insider of the debtor, unless –
    (A) the payment is part of a program that is generally applicable to all full-time employees; and
    (B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which

alleged that under the MIP, only eight to ten members of the Debtors' senior management would receive any of the payments.

Beginning on July 10, 2006 and continuing on July 13, 2006, the Bankruptcy Court held a hearing on the MIP motion. Following that hearing, the Bankruptcy Court granted the motion in an order dated July 13, 2006 (the "Order").[4] The Order provides that the "Debtors are authorized, but not directed, to make payments to the [e]mployees, under the [MIP], up to an aggregate amount of $1.395 million." On July 27 and July 28, 2006, the Trustee and the Committee, respectively, each filed appeals from the Order. Appellants did not, however, seek to stay the Order pending appeal. On July 31, 2006, pursuant to the Order, the Debtors made MIP payments in the amount of $550,000 to several of its senior management level employees. On June 26, 2007, the Debtors filed a motion to dismiss this appeal on mootness grounds. On September 10, 2008, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Debtors chapter 11 plan of liquidation (the "Plan").

### III.   THE PARTIES' CONTENTIONS

The Debtors contend that this appeal should be dismissed under the doctrines of constitutional and equitable mootness. Specifically, the Debtors contend that this appeal is constitutionally moot because it is "impossible" for this court to grant any meaningful relief, since

---

the payment is made; or
  (3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c).

[4] The Bankruptcy Court docketed the Order on July 18, 2006.

the payments at issue under the MIP have already been made to employees who are not parties to this appeal. Based on the doctrine of equitable mootness, the Debtors contend that it would be "wholly unfair" for this court to now – more than two years later – require these non-parties to return the payments that they received under the MIP; especially, since the Appellants did not obtain (or even try to obtain) a stay of the Order.

The Appellants contend that the Debtors' motion to dismiss is without merit. They contend that under established Third Circuit precedent, this appeal is neither constitutionally nor equitably moot. Specifically, the Appellants argue that this appeal is not constitutionally moot because at least one effective remedy is available to the court – disgorgement. Additionally, the Appellants contend that this appeal is not equitably moot because it would neither be unfair nor improper for this court to require the return of monies paid to a select number of Debtors' senior managers. The Appellants further contend that the Third Circuit has applied the doctrine of equitable mootness in only a few narrow circumstances, and that none of those circumstances are present here.

**IV.    STANDARD OF REVIEW**

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1). When reviewing a case on appeal, the court reviews the bankruptcy court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof. *In re United Healthcare Systems, Inc.*, 396 F.3d 247, 249 (3d Cir. 2005).

**V.    DISCUSSION**

The Debtors raise two separate mootness arguments: constitutional mootness and equitable mootness. The court will consider each in turn.

### A.     The Doctrine of Constitutional Mootness

The doctrine of constitutional mootness refers to Article III's requirement that a federal court can only exercise jurisdiction over a "case or controversy." U.S. CONST. art. III. If an action is moot, there is no case or controversy. *In re Continental Airlines*, 91 F.3d 553, 558 (3d Cir. 1996). An appeal is moot in the constitutional sense only if events have taken place during the pendency of the appeal that make it "impossible for the court to grant any effectual relief whatever." *Id.* (internal quotations and citations omitted). An appeal, however, is not moot when a court can fashion "some form of meaningful relief, even if it only partially redresses the grievances of the prevailing party[.]" *Id.* As long as a court is in position to grant at least "one of the forms of relief requested," a case is not constitutionally moot. *Id.*

The court concludes that this appeal is not constitutionally moot. As the Appellants correctly note, this appeal should not be dismissed on constitutional mootness grounds because the court is, indeed, in position to grant at least one of the forms of relief requested. Specifically, the court can still order meaningful relief in the form of disgorgement. In reaching this conclusion, the court is guided by the Third Circuit's decision in the *Zenith* case. In *Zenith*, the Third Circuit determined that an appeal was not constitutionally moot, and that some form of meaningful relief could be granted, where there existed the potential for the court to order disgorgement of bankruptcy estate funds paid to third parties. *See U.S. Trustee v. The Official Comm. of Equity Security Holders (In re Zenith)*, 329 F.3d 338, 340 n.1 (3d Cir. 2003). Here, like the court in *Zenith*, this court could order disgorgement of the monies paid to the Debtors' eight to ten senior managers. It is, therefore, not *impossible* for the court to grant some form of meaningful relief in this case. Because the court could impose at least one of the remedies requested by the Appellants (*i.e.*, disgorgement), and

thereby provide "some effective relief," the court finds that this appeal is not constitutionally moot. *In re Continental Airlines*, 91 F.3d at 558.

Furthermore, as it relates to Debtors' constitutional mootness argument, the court is not persuaded by the decision in the *Chateaugay* case. In *Chateaugay*, the Second Circuit held that an appeal of a bankruptcy court order authorizing the debtor to make pension payments was moot. *See Official Committee of Unsecured Creditors of LTV Aerospace & Defense Co. v. Official Committee of Unsecured Creditors of LTV Steel Co. (In re Chateaugay)*, 988 F.2d 322, 327 (2d Cir. 1993). The facts presented in *Chateaugay*, however, are distinguishable from the facts presented here. In *Chateaugay*, the Second Circuit found that the funding of the pension plan was a "key component" of the parties' agreement, and that it "cleared the way for a reorganization of all of the debtors' estates." *Id.* at 326. This is simply not the case here. Here, there is no indication in the record (nor do the Debtors argue) that either the MIP or the Order was a key component to any agreement between the parties; or that either cleared the way for the successful reorganization of the Debtors.[5] There is also no showing that ordering the Debtors' top managers to return the MIP payments would necessarily be detrimental to the Debtors' ability to reorganize. In addition, unlike in *Chateaugay*, this appeal also does not involve payments "exceeding $190 million" or disbursements to "hundreds or thousands of individuals." *Id.* To the contrary, this appeal only involves the payment $550,000 to approximately eight to ten individuals. In view of these distinctions, the court is not convinced

---

[5] The court notes that the Bankruptcy Court recently entered an order confirming the Debtors chapter 11 plan of liquidation. *See In re Nellson Nutraceutical, Inc.*, No. 06-10072 (CSS), Order Confirming Chapter 11 Plan of Liquidation for Nellson Nutraceutical, Inc., *et al.* (Bankr. D. Del. Sept. 10, 2008) (the "Confirmation Order"). The court further notes that the Confirmation Order expressly provides that it does not "affect or in any way alter the rights of the [Trustee] to pursue any appeals of the MIP Order" in this court. *Id.* at 20. The Confirmation Order, however, does state that the Committee "shall withdraw from any pending appeal of the MIP Order with prejudice." *Id.* at 21.

that *Chateaugay* dictates a finding of constitutional mootness in this case.

      **B.**      **The Doctrine of Equitable Mootness**

Under the doctrine of equitable mootness, an appeal should be dismissed, even if a court has jurisdiction and is in a position to grant relief, if implementation of that relief would be inequitable. *See In re Zenith*, 329 F.3d at 343. When considering equitable mootness, there are five factors that a court must consider: "(1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief would affect the rights of parties not before the court, (4) whether the relief would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments." *In re Continental Airlines*, 91 F.3d at 560. The court will now consider each of these five factors in turn.

            *1.*      *Substantial Consummation of the Plan*

The Bankruptcy Code defines "substantial consummation"[6] as the:

> (A)     transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B)     assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C)     commencement of distribution under the plan.

11 U.S.C. § 1101(2). But satisfaction of the statutory definition, "while a first step in applying this factor . . . is not sufficient." *In re Zenith*, 329 F.3d at 344. A court must also consider whether "granting the appeal would unravel the plan." *Id.*

---

[6] The substantial consummation factor is the "foremost consideration" in an equitable mootness analysis. *See In re Continental Airlines*, 91 F.3d at 560; *see also In re Zenith*, 329 F.3d at 340 (describing the "substantially consummated" factor as "the first and most important *Continental* factor").

The court is not convinced that the Plan in this case has been substantially consummated. Certainly, the court is aware that the Bankruptcy Court entered the Confirmation Order and approved the Plan in this case on September 10, 2008. The court, however, is not aware and, at this time, not prepared to conclude that all or substantially all of the transfers called for by the Plan have actually been made. Neither the Confirmation Order nor the Plan provide a date certain by when all or substantially all of the property proposed by the Plan is to be transferred. In fact, as it stands, there is no clear support or basis in the record for this court to conclude, or to say with any certainty that *any* of the transfers under the Plan have been made.[7] The court therefore cannot conclude that the Plan has been substantially consummated.

Furthermore, even if the Plan was substantially consummated in the definitional sense, the court is not persuaded that granting this appeal would necessarily unravel the Plan. Specifically, the court is not convinced that requiring eight to ten individuals (who are not parties in this case) to return $550,000 in payments would unravel the Plan. As noted above, there is no indication in the record, and the Debtors have not demonstrated, that either the MIP or the Order at issue in this appeal was a key component to any agreement reached by the parties regarding the Plan, or somehow cleared the way for the successful reorganization of the Debtors. The "substantial consummation" factor, therefore, weighs against dismissing this appeal on equitable mootness grounds.

### 2.     *Failure to Obtain a Stay*

---

[7] *Compare In re Machne Menachem, Inc.*, No. 3:07-CV-0057, 2008 U.S. Dist. LEXIS 30758, at *9-10 (M.D. Pa. Mar. 31, 2008)(concluding that the statutory requirements for substantial consummation were met where the record indicates that: (a) "all tangible property of the Debtor ha[d] been transferred" under the plan, (b) "distribution to certain creditors ha[d] already taken place," and that (c) "little remain[ed] for the Debtor post confirmation").

There is no dispute that the Appellants failed to seek or obtain a stay pending their appeal of the Order (nor was a stay ordered). This factor therefore weighs in favor of a finding of equitable mootness. *See In re Continental Airlines*, 91 F.3d at 561-62 (noting that a party's failure to obtain a stay pending appeal is done so at the party's "own risk").

### 3.    *Parties Not Before the Court*

The Debtors contend that reversal of the Order would have a "deleterious" impact on third parties who are not before this court. The court agrees. Certainly, if this appeal succeeds, the Debtors' senior managers that received MIP payments pursuant to the Order will be required to return these payments. Thus, this factor weighs in favor of finding equitable mootness.

### 4.    *Success of the Plan*

On the other hand, the court is not persuaded (nor have the Debtors sufficiently demonstrated) that the relief the Appellants are seeking in this appeal would impair the success of the Plan. It is not clear to the court that the relief requested (*i.e.*, requiring the eight to ten individuals who are not parties in this case to return $550,000 in payments) would in any way derail the Plan or the Debtors' reorganization. This factor weighs against dismissal.

### 5.    *Public Policy of Affording Finality to Bankruptcy Judgments*

Since unraveling of the Plan is not likely, the court sees no harm to the public policy of affording finality to bankruptcy judgments. Specifically, the Debtors have not shown how reversal of the Order undermines the Plan, the Debtors reorganization, or the public policy in favor of affording finality to the Confirmation Order in this case. The public policy factor therefore weighs against dismissing this appeal on equitable mootness grounds.

## VI.    CONCLUSION

Because the Plan has not been substantially consummated, and the relief the Appellants are seeking would not unravel or impair either the success of the Plan or the Debtor's reorganization, and because this appeal, if successful, would not undermine public policy favor of affording finality to bankruptcy judgments, the court concludes that this appeal is not equitably moot.

For the foregoing reasons, the court will deny the Debtors' Motion to Dismiss Appeal on Mootness Grounds (D.I. 5).

Dated: October 9, 2008      /s/ Gregory M. Sleet
                            CHIEF, UNITED STATES DISTRICT JUDGE